UNITED STATES, Appellee

v.

Kenneth L. GOODMAN, Specialist
U.S. Army, Appellant

No. 11-0389

Crim. App. No. 20090083

United States Court of Appeals for the Armed Forces

Argued October 12, 2011

Decided December 8, 2011

STUCKY, J., delivered the opinion of the Court, in which BAKER, C.J., RYAN, J., and EFFRON, S.J., joined. ERDMANN, J., filed a separate opinion concurring in part and dissenting in part.


<u>Counsel</u>

For Appellant: Major Richard E. Gorini (argued); Lieutenant Colonel Imogene Jamison, Lieutenant Colonel Norman R. Zamboni, and Captain E. Patrick Gilman (on brief); Colonel Patricia A. Ham and Colonel Mark Tellitocci.

For Appellee: Captain Bradley M. Endicott (argued); Colonel Michael E. Mulligan, Major Ellen S. Jennings, and Major Amber J. Williams (on brief).


Military Judge: Michael J. Hargis


<u>**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION**</u>.

Judge STUCKY delivered the opinion of the Court.

We granted review to determine whether the failure of the military judge to advise Appellant of the mistake of fact defense and secure his disclaimer of the defense requires us to set aside his guilty plea. We specified an additional issue, without briefs: Whether the specifications alleging indecent exposure and bigamy under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006), failed to state offenses. We hold that the military judge did not err and Appellant did not raise matters inconsistent with his guilty plea: Appellant's statements during the plea inquiry did not raise a mistake of fact defense. Nevertheless, we remand the case to the United States Army Court of Criminal Appeals (CCA) to determine whether, in light of United States v. Fosler, 70 M.J. 225 (C.A.A.F. 2011), the specifications alleging indecent exposure and bigamy, which do not expressly allege terminal elements, state offenses.

I.

In exchange for the convening authority's agreement not to approve a sentence to confinement in excess of twenty months, Appellant pled guilty to failing to obey a lawful general order by sexually harassing a female solider, maltreating a different female soldier by sexually harassing her, making a false official statement, indecent exposure, and bigamy. Articles 92,

2

93, 107, and 134, UCMJ, 10 U.S.C. §§ 892, 893, 907, 934 (2006). Contrary to Appellant's pleas, the military judge convicted him of wrongful sexual contact. Article 120, UCMJ, 10 U.S.C. § 920 (2006). The military judge sentenced Appellant to a bad-conduct discharge, confinement for twelve months, and reduction to the lowest enlisted grade. The convening authority reduced the term of confinement to eleven months but otherwise approved the sentence. The CCA affirmed in a summary disposition. United States v. Goodman, No. 20090083 (A. Ct. Crim. App. Jan. 21, 2011) (per curiam).

II.

A.

In the specification of Charge I, Appellant, a twenty-seven-year-old MP, was charged with violating Dep't of the Army, Reg. 600-20, Army Command Policy (June 7, 2006), by sexually harassing Private First Class (PFC) L. The regulation provides as follows: "The policy of the Army is that sexual harassment is unacceptable conduct and will not be tolerated." Id. ¶ 7-3.a.

> Sexual harassment is a form of gender discrimination that involves unwelcomed sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature between the same or opposite genders when --
>
> (1) Submission to, or rejection of, such conduct is made either explicitly or implicitly a term or condition of a person's job, pay, career, or

(2) Submission to, or rejection of, such conduct by a person is used as a basis for career or employment decisions affecting that person, or

(3) Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creates an intimidating, hostile, or offensive working environment.

Id. ¶ 7-4.a. "[A]ny Soldier or civilian employee who makes deliberate or repeated unwelcome verbal comments, gestures, or physical contact of a sexual nature is engaging in sexual harassment." Id. ¶ 7-4.b. "A hostile environment occurs when Soldiers or civilians are subjected to offensive, unwanted and unsolicited comments, or behaviors of a sexual nature." Id. ¶ 7-6.b.

### B.

The military judge advised Appellant of the following elements of the offense:

First, that there was in existence a certain lawful general regulation in the following terms:

Army Regulation 600-20, dated 7 June 2006, which prohibits sexual harassment or words to that effect.

Second, that you had a duty to obey such regulation; and

Third, at or near Fort Bliss, Texas, on divers occasions, between on or about 12 January 2008 and 12 February 2008, you violated this lawful general regulation by sexually harassing PFC [L].

The military judge then defined "sexual harassment" as including "influencing, offering to influence, or threatening

4

the career, pay, or job of another person in exchange for sexual favors. Sexual harassment also includes deliberate or repeated offensive comments or gestures of a sexual nature."

During the plea inquiry that followed, Appellant told the military judge that he had been given sexual harassment training several times and knew that sexual harassment was "a no-go in the Army." He stated that he had made sexually charged comments to PFC L that were "against Article 92." Appellant admitted asking PFC L when they were going to have sex and "about shaving her genitalia." When asked if that was the "normal type of banter between the two of you," Appellant answered that it was. Appellant further told the military judge that, on each of the four to six occasions that he had made comments of a sexual nature to PFC L, she responded in a similar fashion. Appellant did not think PFC L was taking offense with his comments until later when she stopped talking to him and reported the comments to military authorities.

Based on Appellant's comments, the military judge expressed concern about accepting his guilty pleas. The defense counsel asked the military judge to focus his questions on the charged time period after the date Appellant was alleged to have had wrongful sexual contact with PFC L. After that alleged touching incident, Appellant's noncommissioned officers told him that his banter was inappropriate and he was given a no-contact order.

Appellant stated that he did not attempt sexual banter with PFC

L thereafter, but believed that,

> due to the fact that she was new in the unit, I -- I
> guess I intimidated her and she -- when soldiers get
> to the unit, they are very, um -- what's the word I'm
> looking for?  They don't wanna stand down to anyone.
> They just go along with the -- the -- the routine, and
> she didn't wanna -- I guess she didn't wanna seem as
> though to offend me, but I'm pretty sure I made her
> feel uncomfortable, sir.

Appellant's first sergeant told him that PFC L found his

comments to be inappropriate and offensive from the beginning,

her comments notwithstanding.  Appellant opined that PFC L's

"comments were a -- [I] guess a defense mechanism."

Appellant acknowledged that he had never met PFC L before

she arrived in the unit, but he had heard "her reputation from

Korea . . . was that she was very promiscuous."  He admitted

that the conversations he had with PFC L were not professional.

She was friendly toward him and on one occasion had hugged him.

He "got the vibe that she was interested" in him, so he "tested

the waters to, like, see if I -- could it go anywhere from

there."  "Sir, she was trying to be friendly and I turned it

sexual in nature."  Appellant initiated the comments of a sexual

nature.  When again asked how PFC L had responded to his

comments, Appellant said, "As I've previously stated, sir, I

think she did it as a defense mechanism."

Summarizing, the military judge asked Appellant if "in hindsight, . . . [Appellant] interpret[ed] her comments back to [him] to be a defense mechanism" and thought PFC L's comments were meant to deflect Appellant's comments. Appellant agreed and admitted that his comments created a hostile work environment and made it difficult for her to do her job without feeling uncomfortable.

## III.

Appellant asserts that his statements during the plea inquiry -- that he thought his comments to PFC L were welcomed -- raised the issue of mistake of fact, that because the military judge failed to secure a disclaimer of the defense an inconsistency in his guilty plea was unresolved, and therefore, his conviction should be set aside.

## A.

During a guilty plea inquiry, the accused must establish not only that he believes he is guilty but also that the factual circumstances support that plea. United States v. Garcia, 44 M.J. 496, 497 (C.A.A.F. 1996). "If an accused 'sets up matter inconsistent with the plea' at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." Id. at 498 (quoting Article 45(a), UCMJ, 10 U.S.C. § 845(a)), quoted in United States v. Phillippe, 63 M.J. 307, 309 (C.A.A.F. 2006). "Once a military

judge has accepted an accused's guilty pleas and entered findings of guilty, this Court will not set them aside unless we find a substantial basis in law or fact for questioning the plea." United States v. Schweitzer, 68 M.J. 133, 137 (C.A.A.F. 2009) (citing United States v. Inabinette, 66 M.J. 320, 322 (C.A.A.F. 2008)); see Article 45(a), UCMJ, 10 U.S.C. § 845(a) (2006).

To rise to the level of inconsistency contemplated by Article 45(a), matters raised at trial must have reasonably raised the question of a defense or must have been inconsistent with the plea in some respect. United States v. Roane, 43 M.J. 93, 98 (C.A.A.F. 1995). In determining on appeal whether there is a substantial inconsistency, this Court considers the "full context" of the plea inquiry, including Appellant's stipulation of fact. United States v. Smauley, 42 M.J. 449, 452 (C.A.A.F. 1995).

B.

Mistake of fact is a special defense. It "is a defense when it negatives the existence of a mental state essential to the crime charged." 1 Wayne R. LaFave, Substantive Criminal Law § 5.6(a), at 395 (2d ed. 2003); see United States v. Wilson, 66 M.J. 39, 40 (C.A.A.F. 2008). In other words, an accused may not be "convicted when it is shown that he does not have the mental

state required by law for commission of that particular

offense."  1 LaFave, supra, § 5.6(a), at 395.

> If the ignorance or mistake goes to an element
> requiring premeditation, specific intent, willfulness,
> or knowledge of a particular fact, the ignorance or
> mistake need only have existed in the mind of the
> accused.  If the ignorance or mistake goes to any
> other element requiring only general intent or
> knowledge, the ignorance or mistake must have existed
> in the mind of the accused and must have been
> reasonable under all the circumstances.

Rule for Courts-Martial 916(j)(1).

### IV.

"Because the violation of a general regulation is a

general-intent offense, mistake of fact is not a defense unless

the mistake is both honest and reasonable."  United States v.

Brown, 22 M.J. 448, 451 (C.M.A. 1986).  The honest belief prong

is subjective, while the reasonableness prong is objective.  See

United States v. Willis, 41 M.J. 435, 438 (C.A.A.F. 1995).

While Appellant indicated that he may have subjectively

believed that his comments were welcome, nothing in the record

supports the reasonableness of such a belief.  Appellant

outranked PFC L; he was an E-4 while she was an E-3.  He was

tasked with in-processing her into her new unit.  Appellant

admitted that, despite his previous training on sexual

harassment, he initiated the sexual banter -- turning her

attempts at being friendly into something of a sexual nature,

although she did not do or say "anything . . . that led [him] to

believe that she would be receptive to these types of sexually charged comments." Appellant admitted that his comments "created a very hostile work environment" that made it difficult for PFC L to perform her duties. Appellant knew his comments were likely to bring offense. He made them deliberately, in an attempt to find a woman who would be willing to engage in sex with him. Appellant's admissions to the military judge were consistent with his stipulation of fact in which he admitted inserting sexually charged comments into his conversations with PFC L.

In analyzing Appellant's case, we should keep in mind Judge Cox's admonition not to

> overlook human nature as we go about the business of justice. One aspect of human beings is that we rationalize our behavior and, although sometimes the rationalization is "inconsistent with the plea," more often than not it is an effort by the accused to justify his misbehavior.
>
> A good trial judge can usually sort out the guilty plea and determine if an accused is so pleading because he has committed the offense charged.

United States v. Penister, 25 M.J. 148, 153 (C.M.A. 1987) (Cox, J., concurring). The military judge recognized Appellant's rationalization and inquired further into the plea.

Appellant's testimony did not raise a mistake of fact defense or an inconsistency with regard to his guilty plea.

10

There is no substantial basis in either law or fact to question the plea.  See Garcia, 44 M.J. at 498-99.

V.

We affirm the judgment of the United States Army Court of Criminal Appeals as to Appellant's convictions for wrongful sexual contact, failing to obey a lawful general order, maltreatment, and making a false official statement.  We set aside that part of the judgment affirming Appellant's convictions for indecent exposure and bigamy under Article 134, and the sentence, and return the case to the Judge Advocate General of the Army for remand to the United States Army Court of Criminal Appeals for consideration in light of our opinion in United States v. Fosler, 70 M.J. 225 (C.A.A.F. 2011).

ERDMANN, Judge (dissenting in part and concurring in part):

While I concur with the majority's disposition of the specified Fosler issue, I respectfully dissent from the majority's conclusion as to the granted issue. Goodman's statements during the plea inquiry raised the possibility of a defense of mistake of fact. The military judge attempted to resolve the conflict but failed to do so, and then failed to explain the defense of mistake of fact and obtain a disclaimer. I would therefore reverse the decision of the United States Army Court of Criminal Appeals and set aside the findings of guilty to Charge I and its specification.

"Once a military judge has accepted a plea as provident and has entered findings based on it, this Court will not reverse that finding and reject the plea unless it finds a substantial conflict between the plea and the accused's statements or other evidence on the record." United States v. Phillippe, 63 M.J. 307, 309 (C.A.A.F. 2006). This court applies "the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." United States v. Inabinette, 60 M.J. 320, 322 (C.A.A.F. 2008).

Dep't of the Army, Reg. 600-20, Personnel-General, Army Command Policy (June 7, 2006) [Army Regulation], prohibits

sexual harassment in the Army.  The regulation in effect at the time defined and provided examples of "sexual harassment."  Id. at paras. 7-4 - 7-6.  Goodman was charged under Article 92, UCMJ, 10 U.S.C. § 892 (2006), with failing to obey Army Regulation 600-20 by "wrongfully sexually harassing [NL]."  In order to be guilty of the charged violation, Goodman's sexually charged comments must have been either "unwelcomed" or "unwanted and unsolicited" and "ha[d] the purpose or effect of unreasonably interfering with [NL's] work performance or create[d] an intimidating, hostile, or offensive working environment."[1]  Id. at paras. 7-4a(3), 7-6b.

Rule for Court-Martial 916(j) provides for the defense of mistake of fact --

> [I]t is a defense to an offense that the accused held, as a result of ignorance or mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the accused would not be guilty of the offense.  If the ignorance or mistake goes to an element requiring premeditation, specific intent, willfulness, or knowledge of a particular fact, the ignorance or mistake need only have existed in the mind of the accused.  If the ignorance or mistake goes to any

---

[1] Sexual harassment is unacceptable in the workplace and is widely prohibited at both the state and federal levels throughout the United States.  The military, however, is one of the few, if not only, places where workplace sexual harassment (not rising to sexual criminal offenses such as sexual assault or rape) can constitute criminal conduct.  Given this shift from an employment violation to a federal criminal violation, I believe that we must carefully scrutinize offenses which criminalize conduct that would not be criminal in the civilian world.

other element requiring only general intent or knowledge, the ignorance or mistake must have existed in the mind of the accused and must have been reasonable under the circumstances.

"Because the violation of a general regulation is a general-intent offense, mistake of fact is not a defense unless the mistake is both honest and reasonable." United States v. Brown, 22 M.J. 448, 451 (C.M.A. 1986). The issue here is whether Goodman's statements during the providence inquiry raised the possibility of a defense of mistake of fact and, if so, whether the subsequent inquiry by the military judge adequately resolved whether those statements were inconsistent with Goodman's guilty plea. To raise the possibility of a defense of mistake of fact, Goodman must have subjectively believed that his conduct was not unwelcome and there must be some evidence that his honest belief was objectively reasonable under the circumstances. See United States v. Garcia, 44 M.J. 496, 498 (C.A.A.F. 1996).

During the providence inquiry Goodman stated that NL's conduct in combination with her reciprocal banter to his "sexually charged" comments gave him "the vibe that she was interested" and that "at the time" it did not strike him that NL was taking offense with his comments. These initial statements reflected Goodman's subjective belief that at the time of the offense, his comments to NL were not unwelcome. Moreover,

3

contrary to the majority's assertion that "nothing in the record supports the reasonableness of such a belief," Goodman's description of NL's conduct and the fact that she responded to his comments with similar "sexually charged" comments provided some evidence that Goodman's subjective belief was objectively reasonable under the circumstances. When asked by the military judge if NL had told him at any time that he should "'Knock it off' or words to that effect," Goodman responded that she had not.[2]

At that point the military judge was required to either further inquire to clarify that the statements were not inconsistent with his plea or explain the defense of mistake of fact and obtain a disclaimer of the defense. Phillippe, 63 M.J. at 309. The military judge properly indicated that he was having "some difficulty" with the plea and after Goodman conferred with his defense counsel, the military judge conducted a further inquiry.

During the additional inquiry, the military judge asked Goodman if at any point NL had told him, "'I find this sexually charged banter to be inappropriate or offensive.'" Goodman

---

[2] There is no requirement under the regulation that a victim inform an accused that his/her statements or conduct is unwelcome for an accused to believe that the statements or conduct is unwelcome. However, the lack of such a statement linked to a victim's active participation in the sexual banter can reasonably indicate receptiveness to the conduct.

responded that he had been informed that NL found the comments to be inappropriate and offensive when he met with his first sergeant after NL had filed a complaint against him after the incident that formed the basis for the wrongful sexual contact offense. Later in the inquiry the military judge again asked whether it was conveyed to him that NL was offended by the comments. Goodman responded, "Yes. Later on it was conveyed to me that she was offended by what I was saying." The military judge then asked, "And now in hindsight, am I correct in hearing from you that you interpret her comments back to you to be a defense mechanism?" (Emphasis added.) Goodman responded, "Yes, sir."

At no point during the additional inquiry did Goodman admit or agree that at the time of the conversations he was aware that NL found his comments unwelcome or that it was unreasonable for him to subjectively believe his comments were welcome. In other words, Goodman never disavowed that he subjectively believed at the time that his comments were welcome nor did he admit that his subjective belief was objectively unreasonable under the circumstances. Having failed to resolve the conflict between Goodman's guilty plea and his mistaken belief at the time that his comments were not unwelcome, the military judge was required to explain the defense of mistake of fact and attempt to obtain a disclaimer of the defense. As the military judge neither

resolved the conflict nor explained the defense of mistake of fact and obtained a disclaimer, this unresolved conflict results in a substantial basis to question Goodman's guilty plea to Charge I and its specification.

Accordingly, I would reverse the decision of the United States Army Court of Criminal Appeals and set aside the findings of guilty to Charge I and its specification.