# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**R.Q. WARD, J.R. MCFARLANE, K.M. MCDONALD**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

**v.**

**THADDEUS D. CRAWFORD**
**STAFF SERGEANT (E-6), U.S. MARINE CORPS**

**NMCCA 201300285**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 29 March 2013.
**Military Judge:** LtCol Chris Thielemann, USMC.
**Convening Authority:** Commanding General, 1st Marine Division, Camp Pendleton, CA.
**Staff Judge Advocate's Recommendation:** Maj D.P. Harvey, USMC.
**For Appellant:** CAPT Tierney Carlos, JAGC, USN.
**For Appellee:** Maj David N. Roberts, USMC; Capt Matthew Harris, USMC.

**14 January 2014**

---------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

MCFARLANE, Judge:

A military judge, sitting as a general court-martial, convicted the appellant, pursuant to his pleas, of one specification of conspiracy, two specifications of unauthorized absence (one terminated by apprehension), one specification of dereliction of duty, one specification of making a false official statement, and three specification of larceny, in violation of Articles 81, 86, 92, 107, and 121, Uniform Code of

Military Justice, 10 U.S.C. §§ 881, 886, 892, 907, and 921.  The military judge sentenced the appellant to 46 months of confinement, reduction to pay grade E-1, and a bad-conduct discharge.  Pursuant to a pretrial agreement, the convening authority suspended all confinement in excess of 39 months, but otherwise approved the adjudged sentence.

The appellant alleges four assignments of error: 1) that 39 months of confinement is inappropriately severe given the non-violent nature of the offenses and the appellant's combat decorations and injuries; 2) that his sentence is disparately severe compared to that of his co-conspirator and of another Marine from his unit who faced similar charges; 3) that his plea to dereliction of duty was improvident; and 4) that the staff judge advocate committed plain error by incorrectly stating in his recommendation that the appellant pled guilty to a number of offenses that were withdrawn and dismissed.[1]

After considering the pleadings of the parties, the record of trial, and oral argument,[2] we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.  Arts. 59(a) and 66(c), UCMJ.

## Background

The appellant joined the Marine Corps in July of 1996, and served six years in the infantry before being honorably discharged in September of 2002.  In May of 2004, the appellant returned to active duty, once again as a machine gunner.  In 2005, the appellant completed a seven month combat deployment to Iraq, during which his unit was engaged in some of the most intense fighting of the war.  The appellant was exposed to numerous Improvised Explosive Device (IED) blasts, to include one that blew him off his feet, rendered him unconscious, and caused him to bleed from his nose and ears.  Despite his

---

[1] The staff judge advocate's recommendation (SJAR) did not actually list the appellant's pleas and findings, but rather attested to the accuracy of the information contained in the amended results of trial, attached to the recommendation as enclosure (1).  While we agree with the appellant that the initial results of trial incorrectly stated his pleas and findings, the amended version, which was referenced by and appended to the SJAR, correctly reflected the charges and findings.  Accordingly, we will not further address this assignment of error.

[2] The court heard oral argument from the parties on 4 December 2013, limited to the first assignment of error.

injuries, the appellant refused treatment and focused instead on the mission of evacuating those Marines who had been more seriously wounded. On several other occasions, the appellant displayed exceptional heroism. When his squad was pinned down by enemy sniper fire the appellant charged across open ground, engaging with and killing two enemy combatants. On another occasion the appellant braved enemy fire to move a seriously wounded Marine to a safe location where he could be treated by a medic while awaiting evacuation. As a result of these and other actions, the appellant was awarded the Navy Commendation Medal (Combat V), the Navy Achievement Medal (Combat V), and the Combat Action Ribbon.

In 2008, the appellant began to suffer from severe headaches. He was eventually diagnosed with traumatic dural fistula brain injury, a condition that caused pooling of the blood on his brain. The appellant underwent four separate surgeries to control the bleeding and alleviate the pressure within his skull. These surgeries largely consisted of installing multiple coils inside his brain to prevent the blood from pooling.

As a result of his injuries, the appellant was placed on limited duty, removed from his infantry unit, and assigned to the regiment's Remain Behind Element, where he served as the unit's Defense Travel System (DTS) administrator. The appellant quickly learned that little or no supervision was being exercised over the DTS system, and he began to make fraudulent claims. Over an eight-month period, the appellant personally stole over $86,000.00 from the Marine Corps by submitting false claims. He also encouraged one of his direct subordinates, a Lance Corporal (LCpl), to submit false claims, which led to the theft of another $7,700.00. Lastly, while not directly involved in the theft, the appellant, through dereliction of duty, approved a third Marine's false claims, amounting to more than $16,000.00.

In May of 2010, the appellant received a telephone call from the regiment's financial officer, questioning him about several claims he filed. Realizing that the command's inquires would soon reveal his crimes, he and his Mexican-national girlfriend fled to Mexico City. Approximately six months later, he surrendered himself to the U.S. Embassy in Mexico City, but when he ran into difficulty leaving the country on the straggler's orders that he was given, he resumed his unauthorized absence status. For the next eighteen months he lived and worked in Mexico, posing as a Mexican citizen, until

3

he was apprehended by the Naval Criminal Investigative Service (NCIS) and returned to the United States to stand trial.

Additional facts are developed below as needed.

## Analysis

### Sentence Appropriateness

The appellant argues that his sentence is inappropriately severe based on his character and record of service. We disagree.

This court reviews the appropriateness of a sentence *de novo*. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves. *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). We engage in a review that gives "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180-81 (C.M.A. 1959)).

The appellant's record of service, particularly his combat service, was exemplary. Undoubtedly, his acts of heroism, and the significant combat-related injuries he sustained while serving in Iraq, weighed heavily in the sentencing calculations. However, weighing against the appellant were the nature, severity, and duration of his crimes.

Once his injuries prevented the appellant from serving as a machine gunner, he was reassigned as a DTS administrator – a position of significant trust and authority. The appellant abused that trust by filing multiple false claims, defrauding the Government out of more than $86,000.00 over an eight-month period. No compelling need prompted these thefts. When asked why he started stealing the appellant said "because I could" and [t]he apple was there and I picked it." Prosecution Exhibit 3 at 4. The appellant further abused this trust by approving obviously fraudulent claims being submitted by another Marine, totaling another $16,000.00.

The appellant also abused the trust he was given as a staff noncommissioned officer. Without being asked to, he overpaid a claim submitted by a LCpl whom he directly supervised. When the

4

LCpl, who was having money problems, asked about the overpayment, the appellant entered into a conspiracy with his subordinate. The thefts then committed by the two of them cost the Government another $7,700.00, and led to the LCpl being sentenced to 10 months confinement, reduction to E-1, and a bad-conduct discharge.

Further weighing against the appellant is the fact that he avoided prosecution by fleeing the country. The appellant moved to Mexico, assumed a false identify as a Mexican citizen, and only returned to face the charges against him after he was apprehended by NCIS two years later. While it is true that he surrendered himself to the United States embassy at one point, the appellant's failure to return to the embassy when he encountered difficulties at the airport indicates little or no motivation on his part take responsibility for his actions.

In light of the entire record, we find that the appellant's adjudged and approved sentence of 46 months of confinement, reduction to pay grade E-1, and a bad-conduct discharge is appropriate for this offender and his offenses. *United States v. Baier*, 60 M.J. 382, 384-85 (C.A.A.F. 2005); *Healy*, 26 M.J. at 395-96; *Snelling*, 14 M.J. at 268. The fact that the adjudged sentence did not include a sizable fine, especially given the appellant's significant unjust enrichment, and the fact that the appellant was not awarded a dishonorable discharge, appears to be the direct result of the weighty mitigation evidence presented in this case. Lastly, while a strong argument can be made that clemency would be appropriate in this case, clemency is a prerogative reserved for other authorities, and is not within this court's power to grant. *See Healy*, 26 M.J. at 395.

### *Sentence Disparity*

The appellant argues that his sentence is disparately severe when compared the sentence received by his co-conspirator, LCpl K, who was sentenced at a special court-martial to 10 months of confinement, reduction to pay grade E-1, and a bad-conduct discharge. The appellant also argues that his sentence is disparately severe when compared to the sentence awarded to Staff Sergeant (SSgt) M (which the appellant argues is a closely-related case), who was sentenced at a general court-martial to 90 days of confinement, reduction to pay grade E-3, and a bad-conduct discharge. We disagree.

The appropriateness of a sentence generally should be determined without reference or comparison to sentences in other

5

cases.  *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985).  We are not required to engage in comparison of specific cases "'except in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'"  *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *Ballard*, 20 M.J. at 283).  The burden is upon the appellant to make that showing.  *Id.*  "Closely related" cases are those that "involve offenses that are similar in both nature and seriousness or which arise from a common scheme or design." *United States v. Kelly,* 40 M.J. 558, 570 (N.M.C.M.R. 1994)*; see also Lacy*, 50 M.J. at 288 (citing examples of closely related cases as including co-actors in a common crime, servicemembers involved in a common or parallel scheme, or "some other direct nexus between the servicemembers whose sentences are sought to be compared").  If the appellant meets this threshold, the burden shifts to the Government to demonstrate a rational basis for the disparity.  *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001)*; Lacy*, 50 M.J. at 288.  Co-conspirators are not entitled to equal sentences.  *United States v. Durant*, 55 M.J. 258, 260 (C.A.A.F. 2001).

Assuming without deciding that both of the cases cited by the appellant are "closely related" and that their sentences are highly disparate, we nonetheless find a rational basis for the disparity; both of the other cases involved significantly different charges or findings of guilt.  The appellant's co-conspirator, LCpl K, was convicted of stealing $7,700.00, not $86,000.00.  That alone would provide a rational basis for different sentences.  Moreover, LCpl K was by far the more junior member of the conspiracy, and he did not flee the country to avoid prosecution.  As for SSgt M, he stole $70,000.00 less than the appellant, did not conspire with a subordinate to commit a crime, and did not flee the country.  Moreover, while SSgt M received significantly less confinement than the appellant, he was retirement eligible before he was awarded his bad-conduct discharge, something that was not true of the appellant.

Given these differences, the Government has more than met its burden to demonstrate a rational basis for the sentence disparity.

*Dereliction of Duty*

The appellant claims the military judge abused his discretion by accepting his guilty plea to dereliction of duty. In making this argument, the appellant relies upon *United States v. Sojfer*, 44 M.J. 603 (N.M.Ct.Crim.App. 1996), *aff'd*, 47 M.J. 425 (C.A.A.F. 1998), which stands for the proposition that one cannot be convicted of dereliction of duty when the alleged acts were "beyond the scope of [the appellant's] duties." *Id*. at 610. Further, the appellant states that "[a]rguably, the stipulation of fact does provide a sufficient basis to conclude Appellant's conduct met the elements of dereliction of duty," but argues that the military judge's failure to resolve inconsistencies between the stipulation of fact and the plea rendered his plea improvident. Appellant's Brief of 23 Sep 2013 at 21-22.

"A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion." *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008) (citations and internal quotation marks omitted). We will not disturb a guilty plea unless the record of trial shows a substantial basis in law or fact for questioning the guilty plea. *Id.* To prevent the acceptance of improvident pleas, the military judge is required to develop, on the record, the factual bases for "the acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty." *United States v. Care*, 40 C.M.R. 247, 253 (C.M.A. 1969) (citations omitted); *see also* Art. 45, UCMJ. The appellant must admit every element of the offense to which he pleads guilty. *United States v. Aleman*, 62 M.J. 281, 283 (C.A.A.F. 2006); see *also* RULE FOR COURTS-MARTIAL 910(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). If the military judge fails to establish that there is an adequate basis in law or fact to support the appellant's plea during the *Care* inquiry, the plea will be improvident. *Inabinette*, 66 M.J. at 322; *see also* R.C.M. 910(e). This court "must find 'a substantial conflict between the plea and the [appellant's] statements or other evidence' in order to set aside a guilty plea. The 'mere possibility' of a conflict is not sufficient." *United States v. Watson*, 71 M.J. 54, 58 (C.A.A.F. 2012) (quoting *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996)). "In determining on appeal whether there is a substantial inconsistency, this Court considers the 'full context' of the plea inquiry, including Appellant's stipulation of fact." *United States v. Goodman*, 70 M.J. 396, 399 (C.A.A.F. 2011) (citing *United States v. Smauley*, 42 M.J. 449, 452 (C.A.A.F. 1995)).

7

Our review of the record in this case reveals no basis for questioning the appellant's plea.  Unlike in *Sofjer*, the case relied upon by the appellant in his brief, the appellant in this case was not charged with willful dereliction of duty for committing acts "which he was not authorized to do."  44 M.J. at 610.  Rather, the appellant was charged with "willfully fail[ing] to properly evaluate the Defense Travel System claims of certain individuals before approving them for payment, as it was his duty as the Approving Official to do so."  Charge Sheet.  Accordingly, the principle set forth in *Sofjer*, that dereliction of duty cannot be used as a basis for criminalizing "acts committed which go beyond the scope of one's duties," is inapplicable.  *Id*.

Moreover, we find no substantial conflict between the appellant's answers during the providence inquiry and the stipulation of fact.  During the providence inquiry, the appellant admitted that he "knew what [his] responsibilities were" and that he "did not properly evaluate the claims . . . ."  Record at 78.  In the stipulation of fact the appellant admitted that he was "derelict in [his] evaluation duties by approving some Defense Travel System requests for reimbursement without properly reviewing those claims . . . ."  Pros. Ex. 1 at 8.  The fact that he knew that some of the claims he failed to review were fraudulent further supports, rather than contradicts, his admission that he was derelict in the performance of his duties.

## Conclusion

The findings and the sentence as approved by the convening authority are affirmed.

Senior Judge WARD and Judge MCDONALD concur.

For the Court

R.H. TROIDL
Clerk of Court

8