# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**R.Q. WARD, J.R. MCFARLANE, K.M. MCDONALD**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**NICHOLAS A. HOWARD**
**GUNNERY SERGEANT (E-7), U.S. MARINE CORPS**

**NMCCA 201300346**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 3 May 2013.
**Military Judge:** LtCol Chris Thielemann, USMC.
**Convening Authority**: Commanding General, Marine Corps
Recruit Depot/Western Recruiting Region, San Diego, CA.
**Staff Judge Advocate's Recommendation:** Maj J.E. Ming, USMC.
**For Appellant:** Philip D. Cave, Esq.; LT David Dziengowski,
JAGC, USN; Capt Jason Wareham, USMC.
**For Appellee:** LT Ian MacLean, JAGC, USN.

**26 November 2014**

---------------------------------------------------------
## OPINION OF THE COURT
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS
PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

Contrary to his pleas, members at a general court-martial
convicted the appellant of aggravated sexual assault and
adultery in violation of Articles 120 and 134, Uniform Code of
Military Justice, 10 U.S.C. §§ 920 and 934. The convening
authority (CA) approved the adjudged sentence of forfeiture of
all pay and allowances, reduction to the pay grade E-1, and a
dishonorable discharge and, except for the discharge, ordered
the sentence executed.

On appeal, the appellant raises three assignments of error; first, that the military judge erred in admitting hearsay evidence under MILITARY RULE OF EVIDENCE 803(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.);[1] second, that the evidence is legally and factually insufficient; and third, that the military judge erred when he denied the defense request for an instruction on the affirmative defense of mistake of fact as to consent. After carefully considering the record of trial and the submissions of the parties, we are convinced that the findings and the sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

## Background

At the time of his offenses, the appellant was a Marine staff noncommissioned officer (SNCO) assigned to a Marine Corps Recruiting Office in Anchorage, Alaska. A longtime friend and fellow SNCO, Staff Sergeant (SSgt) C, also worked in the recruiting office with the appellant. SSgt C's girlfriend, KK, worked near the office; she and SSgt C had been dating for several months before the events in question.

On 30 December 2011, SSgt C, KK, the appellant, his wife AH, and AH's sister, went out together for dinner to celebrate KK's and AH's birthdays. During the meal everyone consumed alcohol. After dinner the group stopped at another location for drinks before heading back at the appellant's home where they continued drinking and socializing. By this point in the evening, SSgt C and KK were planning on spending the night in a camping trailer next to the appellant's residence to avoid driving home after drinking.

Next to the house were a hot tub and the camping trailer. KK borrowed a bikini swimsuit from AH and SSgt C borrowed a swimsuit from the appellant. KK and SSgt C got into the hot tub while the appellant occupied himself with attempting to fix a problem with the hot tub. Not long after they got into the hot tub, KK began to "doze off" and SSgt C noticed that she was getting tired and thought it time to go to bed. Record at 435-36. He got out and went inside the house to change out of his wet suit. KK remained in the hot tub.

---

[1] After reviewing this assignment of error, the record of trial and the military judge's ruling, we find no abuse of discretion. *United States v. Clifton*, 35 M.J. 79, 81 (C.M.A. 1992).

2

At trial, KK could not remember much after getting into the hot tub. She remembered the appellant picking her up and carrying her over his shoulder, and then being "sat down" on the steps to the trailer. *Id*. at 358. Once inside she lay down on a bed in the back of the trailer in a slight fetal position facing the wall. The appellant then began checking on a propane heater inside the trailer. A few minutes later SSgt C entered the trailer and assisted the appellant who was checking on a smoke detector. After they realized that the batteries in the detector were faulty, SSgt C went inside the house to retrieve new batteries while the appellant stayed in the trailer with KK.

KK remained lying on the bed on her right side facing the wall. Her next memory is feeling someone lay down behind her and pull down her bikini bottom. As she looked over her shoulder, she realized it wasn't SSgt C behind her and she placed her hand behind her and pushed against the appellant's leg. *Id*. at 363. The appellant placed his left arm over her as she attempted to push against his leg in an effort to move away. She reached down between her legs with her other hand and attempted to remove her tampon as she "didn't want it to get stuck inside . . . ." *Id*. at 364. The appellant then penetrated KK's vagina with his penis.

Shortly thereafter, SSgt C returned to the trailer. This time he could not enter as the door was locked. After the appellant unlocked the door, SSgt C entered and saw KK still on the bed in the same position. However, he noticed something was amiss as KK looked upset but wouldn't or couldn't respond to him. When he asked the appellant what was going on and "why is [KK] upset", the appellant merely said he didn't know. *Id*. at 440. SSgt C testified that at that point he "needed to get [KK] out of there to figure out what really happened . . . [and he knew] he needed to get KK out of the situation just so that way [he] could get her somewhere and talk to her." *Id*. Once inside the house, however, KK became "super upset" and was "sobbing, crying, laying on the floor." *Id*. at 441. After SSgt C helped KK change into her clothes, he drove her back to his house.

KK continued crying during the ride and she immediately went to the bathroom once they arrived at his house. There SSgt C asked her if the appellant "had forced himself" on her to which she replied that he did. *Id*. at 444. Once KK began to calm down, she told SSgt C that she was concerned that she could not retrieve her tampon. KK then called her mother, a registered nurse, who came to the house and, along with SSgt C, took KK to the Alaska Regional emergency room. *Id*. at 367, 446.

3

At the emergency room, KK reported that she had been raped and needed help removing the impacted tampon. *Id.* at 367. However, in light of her allegation, police escorted KK to another hospital, Providence Alaska Medical Center that maintained a dedicated clinic for those reporting sexual assault. There KK met with a forensic nurse practitioner who examined her, removed the tampon, and collected vaginal and cervical swabs for forensic testing and testing for sexually transmitted diseases. *Id.* at 584-92.

The following morning, police interrogated the appellant. Despite repeated questioning, the appellant adamantly denied any sexual contact with KK. Forensic testing revealed the appellant's DNA in seminal fluid found on vaginal swabs taken from KK. However, DNA profiles taken from the appellant's penile swabs matched only his wife, not KK. *Id.* at 498-500.

## Legal and Factual Sufficiency

In his second assignment of error, the appellant asserts that his convictions are both legally and factually insufficient. We review questions of legal and factual sufficiency *de novo*. *United States v. Washington*, 57 M.J. 394, 399-400 (C.A.A.F. 2002). We review the legal sufficiency of the evidence by determining "whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). The test for factual sufficiency is whether "after weighing all the evidence in the record of trial, and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the appellant's guilt beyond a reasonable doubt." *United States v. Rankin*, 63 M.J. 552, 557 (N.M.Ct.Crim.App. 2006), *aff'd*, 64 M.J. 348 (C.A.A.F. 2007) (citations omitted).

In support of his argument on the sexual assault offense, the appellant cites the lack of corroborating DNA evidence on the appellant's penile swabs and KK's lack of recall as to any penetration. In addition, he cites to KK's lack of credibility, the lack of any evidence of offensive touching by the appellant, and the failure of the Government to disprove consent.[2] In

---

[2] The appellant attacks KK's credibility by citing to her lack of physical resistance, failure to say anything during the assault, and her act of attempting to remove her tampon.

4

relation to the adultery offense, the appellant points to the lack of any evidence of prejudice to good order and discipline. Appellant's Brief of 6 Feb 2014 at 25-29. We disagree.

Viewed in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found all essential elements of the offenses proven beyond a reasonable doubt. Despite KK's lack of recall of penetration, forensic testing detected seminal fluid on all the swabs taken from KK's vaginal wall, cervix, and the impacted tampon.[3] Furthermore, the forensic nurse testified that she only encountered such horizontal positioning of an impacted tampon as a result of sexual intercourse while a tampon was inserted. *Id.* at 589-90.

The appellant's reaction when SSgt C reentered the trailer, KK's immediate emotional distress, her statements to SSgt C and hospital personnel soon thereafter, and the appellant's false denials to police the following morning all undermine the appellant's current claim on appeal that the Government failed to disprove consent or at a minimum any offensive touching. To the contrary, we conclude that a reasonable fact finder, weighing all the evidence, could rationally find all elements of each offense. Furthermore, even recognizing that we did not personally observe the witnesses, we ourselves are convinced of the appellant's guilt beyond a reasonable doubt.

### Mistake of Fact as to Consent Instruction

In his last assignment of error, the appellant contends that the military judge erred when he refused the defense request to instruct the panel on mistake of fact as to consent. We review his claim of instructional error *de novo*. *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008). An erroneous failure to instruct on an affirmative defense is tested for harmlessness beyond a reasonable doubt. *United States v. Wolford*, 62 M.J. 418, 420 (C.A.A.F. 2006) (citation and internal quotation marks omitted). Prejudice attaches if "there is a reasonable possibility that the [error] complained of might have contributed to the conviction." *United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F. 2007) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

---

[3] The analyst from the forensic laboratory who performed the DNA analysis testified that DNA from the appellant matched DNA found in seminal fluid on the vaginal swabs. Record at 499-500. However, because the appellant was the only person of interest, in accordance with lab policy she did not test any of the swabs taken from the cervix or impacted tampon for DNA comparison. *Id.*

5

In denying the defense request for a mistake of fact instruction, the military judge found "some evidence" of consent but insufficient evidence of mistake of fact as to consent. Record at 699-700.[4]  It appears the military judge considered the same facts cited by the defense for both instructions, although he did not explain why those facts provided "some evidence" of consent but not mistake of fact as to consent.[5]  However, assuming *arguendo* that the military judge erred, we find that the appellant suffered no prejudice.

Mistake of fact as to consent requires that the appellant held an honest but mistaken belief that KK consented to the sexual act and that such belief was reasonable.  RULE FOR COURTS-MARTIAL 916(j)(3), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).  Thus there is both a subjective and objective component. *United States v. Goodman*, 70 M.J. 396, 399 (C.A.A.F. 2011) (citation omitted).  Therefore, even if the appellant honestly believed that KK consented, that belief must be objectively reasonable or the defense fails.  Based on our review of the record, we conclude beyond a reasonable doubt that the panel would have rejected as objectively unreasonable any mistaken belief that KK consented.

KK testified that she was "definitely intoxicated" by the time she got into the hot tub.  Record at 354.  Less than 15 minutes later she began dozing off to the point where her boyfriend, SSgt C decided he should put her to bed.  Yet it was the appellant who picked KK up and carried her over his shoulder to the trailer while SSgt C went inside to change clothes.  After she lay down on the bed still in her bikini and towel, KK curled up into a slight fetal position without speaking or moving.  Once SSgt C left the trailer to retrieve batteries for the smoke detector, the appellant locked the door and lay down on the bed behind KK without a word.  Despite the lack of any inviting comment or similar action on KK's part, the appellant pulled her bikini bottom down and penetrated her from behind.  Moments later SSgt C returned to the trailer to find KK visibly

---

[4] As most of the discussion on instructions occurred during a RULE FOR COURTS-MARTIAL 802, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) discussion, the record is largely silent on this issue.  Record at 691.

[5] The facts cited by the civilian defense counsel supporting "some evidence" of consent and mistake of fact were KK's testimony that she asked SSgt C after leaving the appellant's house whether she had been flirting; the lack of any evidence of physical force or resistance; KK's failure to say anything during the assault; and KK's action in reaching to remove her tampon.  Record at 695-97.

distressed and the appellant seemingly oblivious to her condition.

We are firmly convinced that just as the panel rejected the defense of consent, they similarly would have rejected any mistaken belief as to consent as objectively unreasonable. Contrary to the appellant's argument, we conclude beyond a reasonable doubt that any failure to instruct on mistake of fact did not contribute to the appellant's conviction. *Moran*, 65 M.J. at 187. Accordingly, we decline to grant relief.

## Conclusion

The findings and the sentence as approved by the convening authority are affirmed.

For the Court

R.H. TROIDL
Clerk of Court