# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, HERRING, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E-1 JASMINE S. HERCULES**
**United States Army, Appellant**

ARMY 20150197

Headquarters, United States Army Cyber Center of Excellence (Provisional)
and Fort Gordon
Edye U. Moran, Military Judge
Colonel Scott F. Young, Staff Judge Advocate (pretrial and recommendation)
Lieutenant Colonel John A. Hamner II, Staff Judge Advocate (addendum)

For Appellant:  Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA;
Captain Jennifer K. Beerman, JA (on brief).

For Appellee:  Lieutenant Colonel A.G. Courie III, JA; Major John K. Choike, JA;
Captain John Gardella, JA (on brief).

26 July 2016

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Senior Judge:

A military judge, sitting as special court-martial, convicted appellant, pursuant to her plea, of one specification of desertion in violation of Article 85, Uniform Code of Military Justice, 10 U.S.C. § 885 (2012) [hereinafter UCMJ].  The military judge sentenced appellant to be discharged with a bad-conduct discharge and to be confined for five months.  The military judge credited appellant with seventy days of pre-trial confinement credit.[1]  The convening authority approved the sentence as adjudged, but instead should have approved only so much of the

---

[1] At trial, the military judge ordered that appellant receive seventy days of

(continued...)

sentence to confinement as provided for 150 days based on the terms of the pretrial agreement.

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises two assignments of error, both of which merit discussion and one of which merits relief.

## BACKGROUND

Appellant pled guilty to a three-year desertion terminated by apprehension. During the colloquy, the military judge accurately defined the elements of desertion and explained them to appellant. Appellant stated she understood the elements and had no questions.

After the elemental explanation, the military judge asked appellant what made her decide to leave her unit. Appellant responded:

> I had a meeting with my first sergeant and captain and we were talking about how I wasn't getting paid and I was getting evicted from my place and they laughed and told me if I needed money that I should work, *so I decided to leave. . .*

(emphasis added.).

---

(…continued)

confinement credit, which is correctly entered in the report of the result of trial. The staff judge advocate's recommendation (SJAR) merely states that the accused was in pretrial confinement for seventy days, but does not advise crediting appellant with confinement credit. Both the SJAR and the addendum recommend the convening authority "approve the findings and sentence as adjudged" without referencing the confinement credit. The convening authority's action and the promulgating order also failed to include this credit. *See* Army Reg. 27-10, Legal Services: Military Justice, para. 5-32.a. (3 Oct. 2011) (requiring a convening authority to "show in [the] initial action all credits . . . regardless of the source of the credit . . . or for any . . . reason specified by the judge"); *United States v. Delvalle*, 55 M.J. 648, 649 n.1, 656 (Army Ct. Crim. App. 2001); *United States v. Arab*, 55 M.J. 508, 510 n.2, 520 (Army Ct. Crim. App. 2001). Appellant did not assign this failure as error or raise the matter personally pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We will direct a correction in the promulgation order to reflect the proper credit. Additionally, to the extent appellant has not already received this credit, appellant will be credited with seventy days of confinement credit.

Appellant explained the meeting with her first sergeant and company commander occurred at their beckoning after a previous period of AWOL and after her recent discharge from an inpatient mental health facility. Appellant explained she was not getting paid because of punishment she previously received for her other unauthorized absences. When the military judge asked when the meeting with her commander and first sergeant occurred, appellant indicated in January. The military judge asked again "what made you leave?" Appellant responded "I was told to leave." In response, the military judge asked "Did anyone in your unit give you authority to leave?" Appellant responded in the negative.

The judge continued the colloquy with appellant and later asked appellant if either her first sergeant or company commander gave her authority to be absent from her unit at any time. She responded no. The military judge then asked if *anyone else* in her unit gave her authority to leave–and appellant responded no. (emphasis added.).

As part of the pretrial agreement, appellant entered into a stipulation of fact in which she admitted all the elements of desertion to include leaving *without authority*. She also disclaimed any legal defense or justification for her desertion.

Prior to her court-martial, a sanity board convened pursuant to Rule for Courts-Martial [R.C.M.] 706 and determined appellant was: 1) mentally responsible at the time of the charged offense; and 2) not currently suffering from a severe mental disease or defect precluding her from having the ability to understand the charges or cooperate intelligently in her defense.[2]

The pretrial agreement states "[m]y defense counsel has advised me of the meaning and effect of my guilty plea, and I understand the meaning and effect thereof."

The military judge accepted appellant's plea to desertion terminated by apprehension as provident. Appellant now complains the military judge abused her discretion by failing to resolve an inconsistency created during the providence inquiry when appellant stated "I was told to leave."

## LAW AND DISCUSSION

We review a military judge's decision to accept a plea of guilty "for an abuse of discretion and questions of law arising from the guilty plea de novo." *United*

---

[2] In appellant's sentencing case, as mitigation evidence her treating physician testified appellant suffered from severe depression, post-traumatic stress disorder due to childhood abuse, and borderline personality traits. These diagnoses, however, did not rise to the level of a defense.

*States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). "[T]he abuse of discretion standard of review recognizes that a judge has a range of choices and will not be reversed so long as the decision remains within that range." *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) (citing *United States v. Wallace*, 296 U.S. App. D.C. 93, 964 F.2d 1214, 1217 n.3 (D.C. Cir. 1992)). A guilty plea will be set aside on appeal only if an appellant can show a substantial basis in law or fact to question the plea. *Id*. (citing *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)). The court applies this "substantial basis" test by determining whether the record raises a substantial question about the factual basis of appellant's guilty plea or the law underpinning the plea. *Id*.; *see also* UCMJ art. 45(a); R.C.M. 910(e).

A providence inquiry into a guilty plea must establish that the accused believes and admits he or she is guilty of the offense and that the factual circumstances admitted by the accused objectively support the guilty plea. *United States v. Garcia*, 44 M.J. 496, 497-98 (C.A.A.F. 1996); *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A. 1980); UCMJ art. 45(a); R.C.M. 910(e). "If an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014) (quoting *United States v. Goodman*, 70 M.J. 396, 399 (C.A.A.F. 2011)) (internal quotation marks omitted); *see also* UCMJ art. 45(a). "A military judge abuses his discretion if he neglects or chooses not to resolve an inconsistency or reject the inconsistent or irregular pleading." *United States v. Schell*, 72 M.J. 339, 345 (C.A.A.F. 2013)(quoting *United States v. Hayes*, 70 M.J. 454, 457-58 (C.A.A.F. 2012)). The military judge need only reject the plea when the accused "persists in his statements" that cause the inconsistency. *United States v. Thompson,* 21 U.S.C.M.A. 526, 527, 45 C.M.R. 300, 301 (1972). Where the possibility of a defense exists, a military judge should secure satisfactory disclaimers by the accused of this defense. *Prater*, 32 M.J. at 436 (citing *United States v. Jemmings*, 1 M.J. 414, 418 (C.M.A. 1976)).

"In determining on appeal whether there is a substantial inconsistency, this [c]ourt considers the 'full context' of the plea inquiry, including [a]ppellant's stipulation of fact." *Goodman*, 70 M.J. at 399 (quoting *United States v. Smauley*, 42 M.J. 449, 452 (C.A.A.F. 1995)). "This court must find a 'substantial conflict between the plea and the accused's statements or other evidence' in order to set aside a guilty plea. The 'mere possibility' of a conflict is not sufficient." *Hines*, 73 M.J. at 124 (quoting *United States v. Watson*, 71 M.J. 54, 58 (C.A.A.F. 2012)).

After thoroughly reviewing the record, we hold that the military judge properly, and repeatedly, asked appellant, if anyone authorized her to leave during the period of her desertion. While appellant raised the possibility of a defense, she did not persist in this statement; instead she disclaimed having authorization to be absent. During the colloquy, appellant indicated four times that no one in a position of authority authorized her to leave during the period of her desertion. The first

4

time the military judge asked her why she left, she very clearly indicated she "decided" to leave. Recognizing appellant's next statement "I was told to leave," the military judge immediately addressed the potentially inconsistent statement by asking appellant if anyone in her unit authorized her to leave, which she answered in the negative three more times during the rest of the colloquy. We conclude appellant did not set up a matter inconsistent with her plea that would give rise to a substantial basis in law or fact to question her plea. Having examined the "full context" of the plea inquiry, to include appellant's responses during the entire colloquy, and the stipulation of fact, and appellant's sentencing case, we hold the military judge reconciled any possible substantial inconsistency presented by appellant's comment that she was told to leave. *See Goodman*, 70 M.J. at 399; UCMJ art. 45(a). Any inconsistency in the inquiry was not "substantial," and was adequately resolved by appellant's subsequent statements that no one gave her authority to leave.

As the appellant has shown no substantial basis in law or fact to question her pleas of guilty, we conclude that the military judge did not abuse her discretion in accepting appellant's plea. *See Inabinette*, 66 M.J. at 322.

## CONCLUSION

The findings of guilty are AFFIRMED. After considering the entire record, the court AFFIRMS only so much of the sentence as provides for a bad-conduct discharge and 150 days of confinement. To the extent appellant has not already received this credit, appellant will be credited with seventy days of confinement credit. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the sentence set aside by this decision are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Judge HERRING concurs.

PENLAND, Judge, dissenting:

Appellant asserts a substantial basis in law and fact exists to question the providence of her guilty plea with respect to whether her absence was without proper authority. I agree, considering appellant's statement to the military judge, "I was told to leave."

Appellant was convicted of desertion, which began 19 January 2012 and ended with her apprehension on 1 January 2015. After correctly advising appellant of the elements of the crime, the military judge initiated the following exchange:

MJ:  At this time I want you to tell me why you're guilty of the offense listed in the specification--tell me what happened.

ACC:  [Inaudible].

MJ:  Private Hercules, if you will speak up a little bit.  So you said you -- when you left Fort Gordon, when was that?

ACC:  On January 19th, 2012.

MJ:  And what unit were you assigned to on that day?

ACC:  Alpha Company, 67th ESB.

MJ:  How long had you been in the military?

ACC:  [Inaudible].

MJ:  So were you on active duty on the 19th January of 2012?

ACC:  Yes, Your Honor.

MJ:  Where did you do your basic training?

ACC:  Fort Jackson.

MJ:  And were you on your AIT training in January of 2012, or had you completed AIT?

ACC:  I had completed AIT.

MJ:  So your first -- your basic training was at Fort Jackson and then where did you go right after that?

ACC:  Fort Gordon.

MJ:  Okay.  What is your MOS?

ACC:  25 Quebec.

MJ:  Which is what?

6

ACC: Multichannel Transmission Systems Operator-Maintainer.

*MJ: What made you decide to leave your unit on the 19th of January 2012?*

*ACC: I had had a meeting with my first sergeant and captain and we were talking about how I wasn't getting paid and I was getting evicted from my place and they laughed and told me if I needed money that I should work, so I decided to leave and . . .*

MJ: So you had a meeting with your first sergeant and the company commander?

ACC: Yes, Your Honor.

MJ: And you were saying you hadn't gotten paid. Why had you not gotten paid?

ACC: I believe it was because I had too many Article 15s.

MJ: Okay, so you -- from looking over the Article 15 it looks like you had -- this was the Field Grade Article 15 from 27 July 2011?

ACC: I had two.

MJ: So you weren't getting paid?

ACC: No, Your Honor.

MJ: Then what happened; you got evicted you said -- you were living off post?

ACC: Yes, Your Honor.

MJ: Did you ask for the meeting in the open door policy or did they call you in?

ACC: No, Your Honor, they called me in.

MJ: And why did they call you in?

7

ACC:  I believe it was proper procedure because I had just gotten discharged from Eisenhower.

DC:  Your Honor, if I may have one moment.

MJ:  Yes.

[Defense counsel conferred with the accused.]

MJ:  Private Hercules, from looking at the Stipulation of Fact it looks like you had gone AWOL -- you had left your unit back in 9 September 2011.

ACC:  Yes, Your Honor.

MJ:  So was the meeting with the first sergeant after you came back from that period of time of being AWOL?

ACC:  Yes, Your Honor.

MJ:  When was that meeting?

ACC:  [Inaudible].

MJ:  In January?

ACC:  Yes, Your Honor.

*MJ:  And what made you leave?*

*ACC:  I was told to leave.*

*MJ:  Did anyone in your unit give you authority to be absent from the military?*

*ACC:  No, Your Honor.*

MJ:  Where did you go?

ACC:  To Columbia, South Carolina.

MJ:  So you went to Columbia and -- did you ever make any attempt to return back to your unit at Fort Gordon?

ACC:  No, Your Honor.

MJ:  So you were in Columbia for the entire time?

ACC:  Yes, Your Honor.

MJ:  Up until 1 January -- or about 1 January 2015, so almost three years you were in Columbia?

ACC:  Yes, Your Honor.

MJ:  Did you ever return -- did you go try to return to your unit at any of that time -- during that three year period?

ACC:  No, Your Honor.

MJ:  And what were you doing in Columbia?  Where were you working?

ACC:  At an apartment complex as a maintenance tech.

MJ:  So when you left when did you decide that you -- you stated you wanted to stay away permanently from your unit?

ACC:  Yes, Your Honor.

MJ:  When did you decide that?

ACC:  When I found a job.

MJ:  How long did it take you to find a job?

ACC:  Three months.

MJ:  So up until that time you weren't sure if you were going to go back or not to your unit?

ACC:  I had not planned to.

MJ:  When you left did you take everything with you?

ACC:  I didn't have anything...

MJ:  So there was really nothing to take?

ACC:  No, Your Honor.

MJ:  Did you take your uniforms or did you leave those behind?

ACC:  They had already collected all of my military uniforms.

MJ:  Before you left?

ACC:  Yes.

MJ:  And why did they do that?

ACC:  It was because I had a lot of FTRs and they didn't want me to have to pay for it.

MJ:  They didn't want you to have to pay for it?

ACC:  My CIF.

MJ:  Okay, so they had taken your CIF?

ACC:  Yes, Your Honor.

MJ:  But did you have uniforms?

ACC:  Yes, Your Honor.

MJ:  So you had uniforms but your CIF issued equipment they had already taken away from you?

ACC:  Yes, Your Honor.

MJ:  And were you living off post at that time?

ACC:  Yes, Your Honor.

MJ:  And you -- who did you report to directly when you were at your unit at Fort Gordon in 2012 in January?

ACC:  I reported to Captain [W] and First Sergeant [S].

> MJ:  First Sergeant who?
>
> ACC:  [S].
>
> MJ:  And Captain ----
>
> ACC:  [W].
>
> *MJ:  [W].  Did either First Sergeant [S] or Captain [W] give you authority to be absent from the unit at anytime?*
> *ACC:  No, Your Honor.*
>
> *MJ:  Did anyone else in the unit give you authority to have leave?*
>
> *ACC:  No, Your Honor.*[3]

(emphasis added.).

I fully agree with my colleagues' description of the legal principles involved. *See also United States v. Phillippe*, 63 M.J. 307, 309 (C.A.A.F. 2006).  However, I respectfully disagree with their analysis and conclusion.

The military judge asked appellant five questions bearing on whether her absence was authorized.[4]  The first was open-ended and prompted appellant to say, *inter alia*, "I decided to leave and. . ."  The military judge interjected and clarified appellant was referring to a meeting with her company commander and first sergeant.  After ascertaining the meeting's circumstances, the military judge asked followed up with a second open-ended question, "[W]hat made you leave?"  Appellant said, "I was told to leave."  The remaining three questions regarding any authority for appellant's absence were certainly not inappropriate, but they were pointed and, depending on one's view, leading.  Appellant did not reconcile the inconsistency between her answers, and the military judge did not ask her to do so.

---

[3] A stipulation of fact included the following:  "On or about 19 January 2012, the accused again departed her unit without authority from a person who could give her such authority.  At the time the accused departed Fort Gordon, she knew she did not have permission to depart Fort Gordon and remain away."

[4] None of the five questions or appellant's answers precisely referred to the time period charged in this case; however, it seems reasonable to conclude the military judge and appellant intended to refer thereto.

Appellant indeed inculpated herself multiple times during the providence inquiry—not counting the admissions contained in the stipulation of fact—but she also plainly exculpated herself once. Military judges correctly and regularly instruct members that the number of witnesses called should not be the guide in evaluating testimony. This case illustrates a corollary—the number of times appellant inculpated herself cannot per se override the single time she indicated she was told to leave her unit.[5]

Appellant's exculpation may have been false, misspoken, or the result of confusion. And to be sure, it was controverted by her three brief answers to the contrary. Nonetheless, it was inconsistent with her plea of guilty and, in my view, created a substantial basis in law and fact, which the military judge did not resolve, to question appellant's providence.

Military trial judges frequently confront difficult providence inquiries. I do not regard that task lightly, particularly where, as here, an accused soldier[6] and counsel for both sides do less than required to facilitate a legally adequate exchange. While recognizing that challenge and the seriousness of the charged misconduct, I respectfully dissent.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[5] Under the circumstances here, the sequence of appellant's conflicting statements does not seem probative; I cannot discount appellant's exculpatory answer only because it was not her last.

[6] Appellant was diagnosed with multiple behavioral health illnesses, and they played a significant role in her misconduct. A sanity board found her mentally responsible and competent to stand trial; appellant specifically disclaimed mental responsibility and competency issues in the stipulation of fact; and, the military judge reasonably concluded that no mental responsibility or capacity issues were raised. I do not quarrel with these determinations, but I do harbor concern that appellant's medical condition may have contributed to her inconsistent statements to the military judge.