# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KRAUSS, HAIGHT, and BORGERDING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant NORMAN R. STOUT**
**United States Army, Appellant**

ARMY 20120592

Headquarters, Fort Drum
Elizabeth G. Kubala, Military Judge
Lieutenant Colonel Olga M. Anderson, Staff Judge Advocate

For Appellant:  Colonel Kevin Boyle, JA; Lieutenant Colonel Peter Kageleiry, Jr., JA; Major Amy E. Nieman, JA; Captain J. Fred Ingram, JA (on brief).

For Appellee:  Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Captain Sean Fitzgibbon, JA; Captain Timothy C. Erickson, JA (on brief).

25 July 2014

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BORGERDING, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of abusive sexual contact with a child, one specification of indecent liberties with a child, and one specification of possession of child pornography in violation of Articles 120 and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 920 and 934 (2006 & Supp. I 2008).  The military judge sentenced appellant to a bad-conduct discharge, confinement for eight years, forfeiture of all pay and allowances, and reduction to the grade of E-1.  The convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement for eight years, and reduction to the grade of E-1.  The convening authority deferred adjudged and automatic forfeitures until action and waived the automatic forfeitures of all pay and allowances for a period of six months after action to be paid to appellant's dependant spouse.

STOUT — ARMY 20120592

This case is before the court for review under Article 66, UCMJ. Appellant raises three assignments of error, one of which merits discussion and relief. For the reasons discussed below, we agree with appellant that the military judge abused her discretion in accepting appellant's pleas of guilty to abusive sexual contact with a child, indecent liberties with a child, and possession of child pornography. We will grant relief in our decretal paragraph. We have also considered those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) and find them to be without merit.

## LAW AND ANALYSIS

We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Schell*, 72 M.J. 339, 345 (C.A.A.F. 2013) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). A guilty plea will only be set aside if we find a substantial basis in law or fact to question the plea. *Id.* (citing *Inabinette*, 66 M.J. at 322). The court applies this "substantial basis" test by determining whether the record raises a substantial question about the factual basis of appellant's guilty plea or the law underpinning the plea. *Inabinette*, 66 M.J. at 322; *see also United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012) ("It is an abuse of discretion for a military judge to accept a guilty plea without an adequate factual basis to support it . . . [or] if the ruling is based on an erroneous view of the law.").

A providence inquiry into a guilty plea must establish that the accused believes and admits he is guilty of the offense and that the factual circumstances admitted by the accused objectively support the guilty plea. *United States v. Garcia*, 44 M.J. 496, 497-98 (C.A.A.F. 1996); *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A. 1980); UCMJ art. 45(a); Rule for Courts-Martial [hereinafter R.C.M.] 910(e). "If an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014) (quoting *United States v. Goodman*, 70 M.J. 396, 399 (C.A.A.F. 2011)) (internal quotation marks omitted); *see also* UCMJ art. 45(a). "A military judge abuses his discretion if he neglects or chooses not to resolve an inconsistency or reject the inconsistent or irregular pleading." *Schell*, 72 M.J. at 345 (quoting *United States v. Hayes*, 70 M.J. 454, 457-58 (C.A.A.F. 2012)).

"In determining on appeal whether there is a substantial inconsistency, this [c]ourt considers the 'full context' of the plea inquiry, including [a]ppellant's stipulation of fact." *Goodman*, 70 M.J. at 399 (quoting *United States v. Smauley*, 42 M.J. 449, 452 (C.A.A.F. 1995)). "This court must find 'a substantial conflict between the plea and the accused's statements or other evidence' in order to set aside a guilty plea. The 'mere possibility' of a conflict is not sufficient." *Hines*, 73 M.J. at 124 (quoting *United States v. Watson*, 71 M.J. 54, 58 (C.A.A.F. 2012)).

2

### *Abusive Sexual Contact with a Child*

In Specification 3 of Charge I, appellant pleaded guilty by exceptions and substitutions to "engag[ing] in sexual contact with NML, a child who had attained the age of 12 years, but had not attained the age of 16 years, to wit: touching her breasts with his hands, touching her buttocks with his hands, and inviting and allowing her to touch his penis and testicles with her hand." This specification involved three separate encounters between appellant and NML, his stepdaughter, who was between 14 and 15 years old at the time of the incidents.

Abusive sexual contact requires, *inter alia*, proof that appellant engaged in "sexual contact," which is defined as:

> [T]he intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of another person, or intentionally causing another person to touch, either directly or through the clothing, the genitalia, anus, groin, breast, inner thigh, or buttocks of any person, with an intent to abuse, humiliate, or degrade any person or to arouse or gratify the sexual desire of any person.

*Manual for Courts-Martial*, *United States* (2008 ed.) [hereinafter *MCM*], pt. IV, ¶ 45.a(h), (t)(2). The military judge read the definition of sexual contact to appellant at the onset of the providence inquiry.

When the judge asked about the underlying facts to support the first incident, appellant admitted that NML had "a bad rash . . . like hives" and that appellant "helped" NML put lotion on part of her breasts because "[h]er mother was busy" at the time. The following exchange then occurred between appellant and the judge:

> MJ: Now, in order to meet the definition of sexual contact that I read you earlier, it's not sufficient that you simply touched her, but that when you touched her you did so with an intent to abuse, humiliate, or degrade another person or to arouse or gratify your sexual desire.
>
> ACC: Yes, ma'am. While I was placing the lotion just around the sides of her back and also the undersides of her breasts to help take care of the rash that was on her.
>
> MJ: When you did that, did that arouse or gratify your sexual desire?

[Appellant conferred with defense counsel.]

After allowing appellant to confer with defense counsel, the military judge read the definition of sexual contact to appellant a second time and continued the colloquy:

> MJ: Did you engage in sexual contact with [NML]?
>
> ACC: In that case, yes, ma'am. I did when I was placing lotion on her.
>
> MJ: And as a result of your placing lotion on her, was your intent to abuse, humiliate, or degrade her or was your intent to arouse or gratify your sexual desire?
>
> ACC: *I was trying to help her, ma'am*, with her [sic] placing the lotion and *it could have made her very uncomfortable, yes*.
>
> MJ: So the intent was to abuse, humiliate, or degrade her?
>
> ACC: Correct, ma'am.
>
> MJ: And that's how it meets the definition of sexual contact?
>
> ACC: Correct, ma'am.

(Emphasis added).

Appellant next described the second incident where he and his then-wife (NML's mother) were "having the sex talk" with NML. NML was sitting on appellant's lap and the arm of the chair, and appellant "had [his] arm around her backside, kind of holding her onto the chair with [his] hands on her back---on her butt." Appellant admitted this touching was not appropriate and that it met the definition of sexual contact. There was no further colloquy on this incident.

Finally, appellant told the military judge that while trying to teach NML "combatives for self-defense," he invited her to touch his genitalia with a closed hand to demonstrate what she should do to a male in a self-defense situation, telling her she needed to "get past the shyness." There was no further discussion of any kind of sexual intent with respect to this specific incident.

4

The military judge made one more attempt to understand appellant's intent with respect to all three instances:

> MJ: And I just want to understand that--I just want to make sure that I understand your intent with these touchings. Do you agree that your intent, all three times when you touched her, was to abuse, humiliate, or degrade [NML]?"
>
> ACC: It *could have been abusive.* Yes, ma'am.

(Emphasis added).

The stipulation of fact recounts these facts, but does not address appellant's intent in any way. Appellant's written statement to law enforcement was attached to the stipulation of fact and in it, appellant stated "allegations of [a] sexual nature" were made against him and "there have been things that could have been viewed as such, but *were not intended to be so*." (Emphasis added). The only one of the three incidents that he addressed in the written statement was the "sex talk" incident. He stated NML was "straddling" him, but he did not have an erection.

Finally, in appellant's unsworn statement, he told the military judge:

> I regret a lot of things that did happen. The things that I did with [NML], or any of the kids; *it was all to* [sic] *being a parent, in my opinion, at the time*. But now that I know the law the way it's been described to me by the defense counsel, I know it was wrong and I'm sorry those actions took place.

(Emphasis added).

After thoroughly reviewing the record, we hold that although the military judge properly and repeatedly read the definition of "sexual contact" to appellant, and appellant admitted he believed the elements and definitions taken together correctly described what he did, the military judge failed to reconcile three substantial inconsistencies raised by appellant during the inquiry and his unsworn statement. *See United States v. Rokey*, 62 M.J. 516, 518 (Army Ct. Crim. App. 2005) ("To resolve a matter inconsistent with a guilty plea, the military judge must . . . identify the particular inconsistency at issue and explain its legal significance to the accused, who must then either retract, disclaim, or explain the inconsistent matter."), *petition denied*, 63 M.J. 240 (C.A.A.F. 2006).

5

First, when appellant was discussing his intent as he placed lotion on NML's back and breasts, appellant admitted only that he was "trying to help her" and that it "could have made her very uncomfortable." While appellant had earlier agreed that he engaged in sexual contact with NML, this later response indicated only his understanding that he was trying to help his stepdaughter and that it might have been uncomfortable *for her*. It does not indicate that his intent was to abuse her or humiliate her. If this were the only potential inconsistency with appellant's plea, we might be persuaded that appellant was merely attempting to rationalize his behavior and was not setting up a matter inconsistent with his plea. However, this is not the case.

The military judge apparently recognized that appellant was minimizing his behavior when she made another attempt, after discussing all of the incidents contained in this specification, to establish that he had the intent to "abuse, humiliate, or degrade [NML]." Unfortunately, appellant again set up a matter inconsistent with his plea by agreeing only that his actions *could have* been abusive instead of admitting that he affirmatively *intended* his actions to be abusive. The military judge did not seek clarification or inquire further on this matter.

Finally, appellant's comments during his unsworn statement, left unresolved by the military judge, leave us no doubt that appellant's comments go beyond minimization. Appellant told the military judge, "in [his] opinion, at the time" he was just "being a parent" and it was only after his defense counsel explained the law to him that he understood he had done something wrong. This indicates to us that appellant was essentially denying that he had any intent to abuse, humiliate, or degrade NML at the time of his conduct. The military judge failed to reconcile this comment with appellant's plea.

Having examined the "full context" of the plea inquiry, to include appellant's responses during the colloquy, the stipulation of fact, and appellant's unsworn statement, we hold the military judge failed to reconcile substantial inconsistencies with regard to appellant's intent. *See Goodman*, 70 M.J. at 399; UCMJ art. 45(a). Accordingly, we find a substantial basis in law and fact to question appellant's plea to abusive sexual contact with a child. *See Rokey*, 62 M.J. at 519.

### *Indecent Liberties with a Child*

The underlying basis for Specification 5 of Charge I was, as pleaded, that appellant "did . . . take indecent liberties in the physical presence of . . . [NML], a child under 16 years of age, by watching pornography and allowing [NML] to watch pornography, with the intent to gratify the sexual desire of the accused." This occurred on one occasion when appellant was watching adult pornography on his computer in the living room at a time when he thought NML was asleep in her

bedroom. Appellant did not know NML was behind him until she "touched the back of the couch and startled" him.

Appellant told the military judge he turned off his computer and "invited [NML] to sit down to discuss what she saw, if she had any issues with it." In contrast, the stipulation of fact stated: "[e]ven after [appellant] realized that [NML] was able to view the pornographic videos and images while he watched them, he made no attempts to cover up his conduct." The only way to reconcile these two apparently contradictory assertions is to read them to mean that while appellant shielded NML from viewing the actual pornography by turning his laptop off, he made no attempt to cover up the underlying fact that he had been watching pornography. Instead, he attempted to discuss with NML what she had seen and "to explain to her how that particular lifestyle isn't really a healthy one," using "pictures of STDs as well as definitions to show her what that lifestyle could lead to." While this reconciliation avoids a potential inconsistency, it still calls into question the providency of appellant's plea to committing indecent liberties with a child.

As an initial matter, we do not question the fact that the act of watching pornography in the physical presence of a child with the proper intent could constitute the crime of taking indecent liberties with a child. *See MCM*, pt. IV, ¶ 45.a(j), (t)(11) ("If . . . a child is exposed to . . . sexual conduct, it is an indecent liberty."); *United States v. Ginn*, 47 M.J. 236, 237, 248 (C.A.A.F. 1997) (affirming a finding of guilt to a charge of indecent liberties with a child by "facilitat[ing] the watching of a pornographic video by two male children.").

However, upon review of the entire record, we hold appellant's admissions fail to establish a factual basis for a plea of guilty to indecent liberties with a child for three reasons. *See Weeks*, 71 M.J. at 46 ("If an accused's admissions in the plea inquiry do not establish each of the elements of the charged offense, the guilty plea must be set aside."); *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002) ("The record of trial must . . . 'make clear the basis for a determination by the military trial judge . . . whether the acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty.'" (quoting *United States v. Care*, 18 U.S.C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969))); R.C.M. 910(e).

First, although appellant pleaded guilty to watching pornography in NML's presence and to "allowing" NML to watch pornography, he admitted only to watching adult pornography by himself in a place where NML might, and ultimately did, accidently see what he was watching. Specifically, he told the military judge he was guilty because he "should not have sat in the living room where it was open to everybody in the family that could have walked out at any time." Appellant never admitted to intentionally and wrongfully watching pornography in NML's presence, nor did he admit to intentionally exposing NML to pornography. To the contrary,

7

appellant specifically told the military judge that once he knew NML was present, he turned the laptop off or "closed the screen down," and put it into "hibernation mode." We find this description does not establish a factual basis to find appellant intentionally and wrongfully watched pornography in NML's presence or that he intentionally "allowed" NML to view the pornographic material.

Second, although appellant agreed with the military judge that his act of watching pornography in NML's presence and allowing NML to watch pornography was indecent, it is not enough to elicit legal conclusions. *See Jordan*, 57 M.J. at 238. The military judge must also elicit the necessary facts to support the plea of guilty. *Id.* (citing *United States v. Outhier*, 45 M.J. 326, 331 (C.A.A.F. 1996)). In this case, the military judge elicited no further facts to establish why appellant thought his behavior was indecent, nor did the stipulation of fact include any facts supporting why appellant's conduct was indecent.[*]

Finally, appellant pleaded guilty to committing indecent liberties with a child "with the intent to gratify the sexual desire of [appellant]." Although appellant agreed with the military judge that he was sexually aroused when he was watching these videos, this indicates only that the pornographic videos themselves caused him to be sexually aroused. The stipulation of fact confirms this as it states appellant "had an erection from the gratifying and sexual nature of the media he was viewing" and appellant "viewed these images and videos because they gave him sexual gratification." Appellant never sufficiently admitted that he committed the act of

---

[*] This failure may have resulted because the military judge did not read or in any way discuss the definition of "indecent conduct" with appellant. *See MCM*, pt. IV, ¶ 45.a(t)(11) ("The term 'indecent liberty' means indecent conduct . . . ."), (t)(12) ("The term 'indecent conduct' means that form of immorality relating to sexual impurity that is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations."). "The providence of a plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts." *United States v. Medina*, 66 M.J. 21, 26 (C.A.A.F. 2008) (citing *Care*, 18 U.S.C.M.A. at 538-39, 40 C.M.R. at 250-51). An accused must understand "the nature of the charges brought against him . . . ." *Id.* An essential aspect of accurately informing an accused of the nature of the offenses "is a correct definition of legal concepts." *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004). For these reasons, we also decline to affirm a finding of the lesser-included offense of indecent acts in violation of Article 120, UCMJ. *See MCM*, pt. IV, ¶ 45a.(k); *United States v. Burkhart*, 72 M.J. 590 (A.F. Ct. Crim. App. 2013) (holding that indecent acts is a lesser-included offense of indecent liberties with a child), *petition denied*, 73 M.J. 56 (C.A.A.F. 2013).

watching pornography in NML's presence or allowed NML to watch pornography with the intent to gratify his sexual desire. Put another way, appellant never sufficiently admitted that his watching pornography in NML's presence or his exposure of NML to pornography was with the requisite intent. It is the connection between the act committed with a child and the intent that is the crux of the crime of indecent liberties. *United States v. Brown*, 3 U.S.C.M.A. 454, 461, 13 C.M.R. 10, 17 (1953) ("In the crime of taking indecent liberties with a minor, the act must be done with intent to gratify the lust, passions, or sex desires of either the person committing the act or of the child. It should be readily apparent that when the act is committed with that specific intent, the potentiality for harm to the child is increased.").

For these reasons, we conclude the military judge abused her discretion in accepting appellant's plea of guilty to indecent liberties with a child.

### *Possession of Child Pornography*

Appellant admitted the following with respect to Specification 1 of Charge IV, which alleged that appellant "knowingly possess[ed] more than two videos of child pornography, as defined in 18 U.S.C. Section 2256(8), such conduct [sic] prejudicial to good order and discipline in the armed forces and of a nature to bring discredit upon the armed forces":

> [W]hen I was using the LimeWire account to download videos, I would do bulk downloads. If there's a star that I like, I would put in that star's name and the first 10 or 15 that popped up is what I download [sic]. I didn't pay attention to the titles or anything until after it was downloaded. And going through some of the videos, I found some that were questionable. They were deleted. Some of them, just by the title alone, they were deleted.
>
> …
>
> During the download of the bulk videos I should have paid more attention to the titles of said videos rather than just doing it blindly. And even after I downloaded and deleted some of them, I continued to do the bulk downloads.

In addition, appellant denied that CID found any files of child pornography on his computer that had not already been deleted and that "jpeg pictures" of child pornography were found on the computer. He also indicated the forensic specialist found the files containing child pornography were "downloaded and deleted shortly after."

9

To commit the offense of possession of child pornography, an accused must, *inter alia*, *knowingly* possess the charged image of child pornography. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994); *New York v. Ferber*, 458 U.S. 747, 765 (1982) ("[C]riminal responsibility may not be imposed without some element of scienter on the part of the defendant."). Appellant did not admit to knowing possession of child pornography. He did not admit to intentionally downloading child pornography, nor did he even admit to intentionally seeking out child pornography. At most, he admitted to being careless in his downloading of adult pornography and then immediately deleting things that were "questionable."

While the facts known to the government—in particular the fact that appellant specifically deleted some items of child pornography from his computer—may have secured a conviction had this been a contested trial, appellant's admissions during the providence inquiry did not establish a factual basis that he *knowingly* possessed child pornography. Although appellant agreed with the military judge that he was in knowing possession of more than two videos of child pornography, again, it is not enough to elicit legal conclusions. *See Jordan*, 57 M.J. at 238. The military judge must also elicit the necessary facts to support each element of the charged offense. *Id.* (quoting *Care*, 18 U.S.C.M.A. at 541, 40 C.M.R. at 253); *Weeks*, 71 M.J. at 46; R.C.M. 910(e). She failed to do so in this case and thus she abused her discretion in accepting appellant's plea of guilty to this specification.

## CONCLUSION

In evaluating a providence inquiry, we must also keep in mind Judge Cox's caution that:

> [Courts must not] overlook human nature as we go about the business of justice. One aspect of human beings is that we rationalize our behavior and, although sometimes the rationalization is "inconsistent with the plea," more often than not it is an effort by the accused to justify his misbehavior.

*Goodman*, 70 M.J. at 400 (quoting *United States v. Penister*, 25 M.J. 148, 153 (C.M.A. 1987) (Cox, J., concurring)). While we recognize appellant was attempting to rationalize his behavior, we find appellant's inconsistent statements and failure to admit facts sufficient to support his pleas went far beyond mere minimization in this case.

As we stated in *United States v. Le*:

> In cases such as appellant's, we agree with Judge Trant's observation in *United States v. Pecard*: "The spectacle,

10

> where both counsel take hold of appellant's arms while the judge grabs the ankles and together they drag appellant across the providence finish line, is not only troublesome, but, as demonstrated by the result in this appeal, in the end, futile."

59 M.J. 859, 864 (Army Ct. Crim. App. 2004) (quoting *United States v. Pecard*, ARMY 9701940, 2000 WL 35801828, at *5 (Army Ct. Crim. App. 7 Dec. 2000) (mem. op.)).

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority. *See generally* R.C.M. 810.

Judge KRAUSS and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court