UNITED STATES, Appellee

v.

Jacob D. MOON, Specialist
U.S. Army, Appellant

No. 13-0536

Crim. App. No. 20120112

United States Court of Appeals for the Armed Forces

Argued April 28, 2014

August 11, 2014

STUCKY, J., delivered the opinion of the Court, in which ERDMANN and RYAN, JJ., joined. OHLSON, J., filed a separate dissenting opinion, in which BAKER, C.J., joined.

Counsel

For Appellant: Captain Brian J. Sullivan (argued); Colonel Kevin M. Boyle, Lieutenant Colonel Peter Kageleiry Jr., and Major Vincent T. Shuler (on brief); Lieutenant Colonel Imogene M. Jamison and Captain John L. Schriver.

For Appellee: Captain Timothy C. Erickson (argued); Colonel John P. Carrell, Captain Steven T. Nam, and Major Robert A. Rodrigues (on brief).

Military Judge: James L. Varley

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge STUCKY delivered the opinion of the Court.

Appellant was convicted, inter alia, of possessing images of "nude minors and persons appearing to be nude minors," in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2012). The case was submitted to this Court on its merits, and we specified two issues for review to determine (1) whether Appellant had fair notice that the charged conduct was prohibited and subject to criminal sanction, and (2) whether his plea was provident. United States v. Moon, 72 M.J. 441 (C.A.A.F. 2013) (order granting review). Assuming, without deciding, that Appellant had notice of the criminality of his conduct, we hold that there is a substantial basis in law and fact to question Appellant's guilty plea.

## I. Posture of the Case

A military judge sitting as a general court-martial convicted Appellant, pursuant to his pleas, of two specifications of possession of child pornography as defined by 18 U.S.C. § 2256(8) (2006) (the Specification of the Charge and Specification 1 of the Additional Charge), and one specification of possession of images of "nude minors and persons appearing to be nude minors" (Specification 2 of the Additional Charge), all in violation of Article 134, UCMJ. The military judge made special findings as to which of the charged images formed the basis of each specification. Appellant was sentenced to a bad-

2

conduct discharge, six months of confinement, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved the adjudged sentence. The United States Army Court of Criminal Appeals found that eleven of the forty-six images the military judge found to be child pornography with respect to the Specification of the Charge were not child pornography, but affirmed the findings and sentence. United States v. Moon, No. ARMY 20120112, 2013 CCA LEXIS 294, at *1—*2, 2013 WL 1457932, at *1 (A. Ct. Crim. App. Mar. 29, 2013) (per curiam).

## II. Background

Appellant was charged with and pled guilty to two specifications of possessing child pornography, as defined by 18 U.S.C. 2256(8), and one specification of "knowingly possess[ing] multiple images of nude minors and persons appearing to be nude minors, which possession was to the prejudice of good order and discipline in the armed forces and was of a nature likely to bring discredit upon the armed forces." During the plea inquiry into the child pornography specification, the military judge provided the federal definitions for child pornography, and discussed with trial counsel and defense counsel that none of the images depicted sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse, but rather that the images qualified as child pornography based only on

3

lascivious exhibition of the genitals.  See 18 U.S.C. 2256(2) (defining "sexually explicit conduct").  The military judge explained to Appellant that not every exposure of the genitals constitutes a lascivious exhibition, and defined lascivious using the factors identified in United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986).  Appellant admitted that the focal point of the child pornography images was the genitals, that a few depicted masturbation, and that some depicted unnatural, sexually coy poses.

With respect to the nude minors specification, the military judge began by stating his concerns:

> Now as I have expressed earlier I was a little concerned when I saw this specification because it's not alleging possession of child pornography.  Rather what it's alleging is the possession of multiple images of nude minors and persons appearing to be nude minors.  And then it alleges this that [sic] possession was to the prejudice of good order and discipline in the armed forces, and was of a nature to bring discredit upon the armed forces.  Now, ordinarily the possession of images of nude minors or persons appearing to be nude minors is not criminalized under the federal code nor is it criminalized under the Uniform Code of Military Justice in either a[n] [e]numerated offense or an explicit Article 134 offense.  However, I'm not saying that it can't be criminalized, it's just not ordinarily criminalized, and my concern here is there are circumstances where having nude images of children or what appears to be children could not be a crime.  In fact, most cases, overwhelming number of cases it's not criminal.

The military judge then asked trial counsel for her theory of criminality in this case.  Trial counsel responded:

4

> Your honor, that those pictures, <u>while not meeting the statutory definition of child pornography</u>, the focal point of those was on the children, was on nude children, or persons who appeared to be nude children, nude minors, that there was no artistic depiction, or artistic value to those photographs and they were used for sexual gratification purposes.

Emphasis added. Defense counsel agreed that that was his understanding of the Government's theory. The military judge then asked Appellant to describe why possession of images of nude minors was a crime under Article 134, and Appellant responded, "I would have to say because it's in the same essence and nature of the first specification, sir."

The military judge sought a definition of "nude" from the parties, and after a brief recess, trial counsel explained that "the definition would include any minor and not wearing clothes between his shoulders and knees." Defense counsel agreed. The military judge again expressed concern about the images that fall into "this catchall provision." He explained that, "[t]he dominant theme appears to be what the accused described as a naturalist type setting, basically, a nudist colony. [This] isn't the kind of graphic, hard-core child pornography I have seen in some other cases."

The military judge then engaged in a colloquy with Appellant, repeating that the nude images are "a little bit outside the definitions of child pornography," and "must not be a lascivious display of their pubic area or something along

5

those lines," or else they would be considered child pornography. He reiterated his concerns that "there are legitimate reasons a person might possess a picture of a nude minor or there might be artistic depictions of nude minors."

At this point, the colloquy begins to rely on leading questions that oscillated between definitions applied to the child pornography specification and the nude minors specification, resulting in ambiguous answers. The following exchange occurred:

> MJ: Were the children in the images performing sexual acts or posed in a sexual or promiscuous manner?
>
> ACC: Yes, sir.
>
> MJ: And not all of the images but in many of them, correct?
>
> ACC: Yes, sir.
>
> MJ: So you know what I'm talking about with regard to promiscuous or kind of coy or sexually inviting pose, would you agree with that?
>
> ACC: Yes, sir.
>
> MJ: One of the things I discussed with you when I defined the term lascivious in making a determination as to whether something is lascivious is, whether the setting is sexually suggestive, whether the child is depicted in an unnatural pose or inappropriate attire considering the child's age, and whether the child is partially clothed or nude, whether the depiction suggests sexual coyness or a willingness to engage in sexual activity and whether the depiction is intended or designed to elicit a sexual response in the viewer. Those are elements that you can consider that I am going to consider in determining whether this was an offense. Do you understand that?

>     ACC:  Yes, sir.
>
>     MJ:  Were many of these children posed in those kinds
>     of poses?
>
>     ACC:  Yes, sir.
>
>     MJ:  And that's not just these images, though, it also
>     covers those that we talked about earlier that did
>     qualify as child pornography, correct?
>
>     ACC:  Yes, sir.

The military judge then confirmed with Appellant that, for example, an image of a child "leaning back on a bed with her legs spread could easily be concluded to be designed to be appealing to somebody's sexual desires," and that sort of image "might fall more into the child pornography category." Appellant agreed, and also responded affirmatively when asked if these images excited sexual desires or lust in him.

Turning to the terminal elements, the following exchange occurred:

>     MJ:  Why do you believe that given that it is not
>     child pornography, why do you think it might cause
>     problems in good order and discipline in the armed
>     forces just to possess pictures of nude children?
>
>     ACC:  Because it would still be along those lines,
>     sir.
>
>     MJ:  Still kind of creepy, right?
>
>     ACC:  Yes, sir.
>
>     MJ:  For the average soldier?
>
>     ACC:  Yes, sir.

7

MJ:  And if they knew you possessed it what would the natural tendency of these people be toward you?

ACC:  Definitely look down on me; avoid me, possibly things of that nature, sir.

MJ:  Perhaps be a little frightened of you with regard to their children and family?

ACC:  Yes.

MJ:  And do you believe your conduct in possessing these images was of a nature to bring discredit upon the armed forces?

ACC:  Yes, sir.

MJ:  Why do you believe that?

ACC:  It's just not something that is Army standards.

MJ:  Okay.  Even though it's not child pornography do you think a person in the general public knowing you possessed images of nude children or nude minors or persons appearing to be nude minors, do you think that might lower their esteem for the armed force?

ACC:  Yes.

MJ:  Why is that?

ACC:  They would hold the Army to a higher standard; above that even still, sir.

MJ:  And generally in society do you think there is a stigma attached to people who have naked pictures of children?

ACC:  Yes, sir.

Both sides agreed that no further inquiry was required for the nude minors specification.

After an overnight recess during which the military judge reviewed the charged images, the military judge made special

findings as to which images constituted child pornography and which were images of nude minors. The military judge made these findings to "aid the Army Court of Criminal Appeals in its responsibility to conduct its Article 66 review," but did not review them with Appellant. The military judge then indicated that he wanted to go over the elements of the nude minors specification again, because he had previously added a wrongfulness element within the specification, when in fact the Government had not charged wrongfulness. The military judge explained that the possession needed only to be "knowing." The military judge then asked Appellant, "even though they didn't charge wrongful, you believe it was wrongful for you to possess these images?" Appellant responded affirmatively, explaining that it was wrongful because "I was held to a higher standard in the Army. . . . I was raised better."

The military judge asked again why Appellant possessed the images of nude minors, and he responded, "Sexual gratification, sir." The military judge then engaged in a colloquy regarding the constitutional aspects of the charge:

> MJ: Okay. The concern I have here of course, [Appellant], is like I talked about yesterday there might be good reason why you'd have images of nude minors. I mean there are works of art hanging up in national galleries that portray children nude, but the point there is an artistic expression and not for sexual gratification or [prurient] interest. You would agree that these weren't artistic models, correct?

ACC: Yes, sir.

MJ: And it wasn't for a medical purpose that you had these images, is that right?

ACC: Yes, sir.

MJ: And you possessed them for your sexual gratification is what you told me, correct?

ACC: Yes, sir.

MJ: And do you think that that's part of why possession of these images isn't protected under the First Amendment of the United States Constitution as a free expression and so forth, that this was actually a crime?

ACC: Yes, sir.

The military judge found Appellant's pleas to all charges to be provident.

### III.  Discussion

We assume, without deciding, that Appellant had notice of the criminality of his conduct, and decide this case solely on the providence issue.[1]  This Court reviews a military judge's

---

[1] Although we do not decide the notice issue in this case, we wholly reject the dissent's "common sense" test.  The Supreme Court in Parker v. Levy ruled that Article 134 was not facially void for vagueness because this Court, along with the Manual for Courts-Martial and other military regulations, has "narrowed the very broad reach of the literal language of the articles, and at the same time has supplied considerable specificity by way of examples of the conduct which they cover."  417 U.S. 733, 754 (1974).  The dissent would do away with this Court's well-established sources of notice with respect to Article 134's reach, see United States v. Warner, 73 M.J. 1, 3 (C.A.A.F. 2013), and replace them with a nebulous "common sense" test.  Such a test would reopen Article 134 to the overbreadth concerns

acceptance of a guilty plea for an abuse of discretion. United States v. Inabinette, 66 M.J. 320, 322 (C.A.A.F. 2008). The test for an abuse of discretion in accepting a guilty plea is whether the record shows a substantial basis in law or fact for questioning the plea. United States v. Passut, 73 M.J. 27, 29 (C.A.A.F. 2014). "If an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." United States v. Hines, 73 M.J. 119, 124 (C.A.A.F. 2014) (quoting United States v. Goodman, 70 M.J. 396, 399 (C.A.A.F. 2011) (internal quotation marks omitted). "This court must find a substantial conflict between the plea and the accused's statements or other evidence in order to set aside a guilty plea. The mere possibility of a conflict is not sufficient." Id. (quoting United States v. Watson, 71 M.J. 54, 58 (C.A.A.F. 2012) (internal quotation marks omitted). "The providence of a plea is based not only on the accused's understanding and recitation of the factual history of the crime, but also on an understanding of how the law relates to those facts." United States v. Medina, 66 M.J. 21, 26 (C.A.A.F. 2008) (citing United States v. Care, 18 C.M.A. 535, 538–39, 40

---

identified in Parker v. Levy and is unworkable in practice: one person's common sense is another person's nonsense.

11

C.M.R. 247, 250–51 (1969)).  We find two substantial bases upon which to question Appellant's guilty plea in this case.

First, the plea contains unresolved inconsistencies. Specifically, the military judge oscillated in his explanations of what conduct constituted the nude minors offense. Preliminarily, he stated that the images in the nude minors specification must be "outside the definitions of child pornography" and "must not be a lascivious display of their pubic area or something along those lines" or else he would consider them under the child pornography specification. However, he then went on to state that he would in fact consider whether the images were lascivious in determining whether they met the definition of nude minors.  But, a few lines later, he again stated that lascivious images would "fall more into the child pornography category."  Shortly after these contradictory statements, the military judge exacerbated the confusion as to which charge he was attempting to explain, by stating generally "I'm sorry, I mentioned child pornography a minute ago, of course I meant nude children or minors."  Appellant contradictorily affirmed (1) that the nude minors images fell outside the definition of child pornography, (2) that the nude minors images involved lascivious poses, and (3) that lascivious images would fall into the child pornography category. Additionally, Appellant responded affirmatively when asked

whether the images of nude minors depicted children "performing sex acts or posed in a sexual or promiscuous manner," despite the military judge's statement that images of nude minors must not meet the definition of child pornography, and despite the fact that the vast majority of the photos associated with the nude minors specification depicted neither.[2] Because the military judge did not go through his special findings with Appellant, it is not at all clear from the record that Appellant understood which images constituted images of nude minors as opposed to child pornography. It is apparent from the record that the military judge provided inconsistent and conflicting explanations of the conduct that he believed constituted the offense of possessing images of nude minors. Appellant affirmed contradictory descriptions of the images at issue, and the confusion was never resolved.[3]

---

[2] With very few exceptions, the images considered under Specification 2 of the Additional Charge depict minors who appear to be in some sort of nudist colony or camp. They are playing sports, playing on a beach, taking photos with each other, and doing other innocuous and nonsexual activities.

[3] The confusion in the distinction between the images considered under the Charge and Specification 1 of the Additional Charge as being child pornography as defined by 18 U.S.C. 2256(8) and the images considered under Specification 2 of the Additional Charge is illustrated by the Government's inconsistent position on this issue. At trial, the Government argued that the images associated with Specification 2 of the Additional Charge did not meet the federal definition of child pornography. The military judge tried the case on that basis. However, on appeal to this Court, the Government argues that the images associated with Specification 2 of the Additional Charge did meet the federal

Second, there is a substantial basis upon which to question whether either the military judge or Appellant understood how the law related to the facts of his case. See Medina, 66 M.J. at 26. "When a charge against a servicemember may implicate both criminal and constitutionally protected conduct, the distinction between what is permitted and what is prohibited constitutes a matter of 'critical significance.'" United States v. Hartman, 69 M.J. 467, 468 (C.A.A.F. 2011) (quoting United States v. O'Connor, 58 M.J. 450, 453 (C.A.A.F. 2003)). "[T]he colloquy between the military judge and an accused must contain an appropriate discussion and acknowledgment on the part of the accused of the critical distinction between permissible and prohibited behavior." Id. Unlike child pornography and obscenity, the conduct at issue in this case -- possessing images of nude minors that fall into neither of those categories -- implicates the protections of the First Amendment. United States v. Barberi, 71 M.J. 127, 130–31 (C.A.A.F. 2012) (noting that speech outside the categories of "'defamation, incitement, obscenity, and pornography produced with real children'" retains First Amendment protection (quoting Ashcroft v. Free Speech

definition of child pornography. It matters not whether, as the Government now argues and the dissent would find, some of the photos in the nude minors category could have qualified as child pornography under some other definition that was not provided to Appellant during the plea inquiry: no one treated them as such at trial, and thus the plea inquiry cannot be saved as provident to a different offense on appeal.

Coalition, 535 U.S. 234, 245—46 (2002))); New York v. Ferber, 458

U.S. 747, 764—65 n.18 (1982) (holding that child pornography is

not protected by the First Amendment, but stating that "nudity,

without more is protected expression"); Miller v. California,

413 U.S. 15, 23 (1973) (holding that obscenity is not protected

by the First Amendment); see also Osborne v. Ohio, 495 U.S. 103,

114 (1990) (upholding version of state statute that, as

construed by the Ohio Supreme Court, "avoided penalizing persons

for viewing or possessing innocuous photographs of naked

children"); Ashcroft, 535 U.S. at 256 (holding that law

prohibiting virtual child pornography unconstitutionally

abridged protected speech).[4]

---

[4] Although the dissent would create and define a middle ground of
"common sense" child pornography, the Supreme Court in Ferber
explained that, in order to be unprotected by the First
Amendment, "the conduct to be prohibited must be adequately
defined" by the applicable law, and include a "suitably limited
and described" definition of "sexual conduct."  458 U.S. at 764.
The state statute approved by the Supreme Court in that case
limited "sexual conduct" to "actual or simulated sexual
intercourse, deviate sexual intercourse, sexual bestiality,
masturbation, sado-masochistic abuse, or lewd exhibition of the
genitals."  Id. at 751.  This sanctioned definition may not
encompass the universe of legally sound statements of what child
pornography is, but it is far narrower than the dissent's
preferred definition, which exists in no applicable law, and
which provides no suitable limiting principles of when a
depiction of some unclothed body part would be considered lewd.
Regardless, whether any of the images in this case would meet
some judicially created "common sense" definition of child
pornography is inapposite:  the issue sub judice is the
providence of a plea in which confusing and contradictory
definitions were provided by the military judge, Appellant

It is settled that "under appropriate circumstances conduct that is constitutionally protected in civilian society could still be viewed as prejudicial to good order and discipline or likely to bring discredit upon the armed forces." Barberi, 71 M.J. at 131 (citing Parker, 417 U.S. at 759; United States v. Forney, 67 M.J. 271, 275 (C.A.A.F. 2009); United States v. Brisbane, 63 M.J. 106, 116 (C.A.A.F. 2006); United States v. Mason, 60 M.J. 15, 19 (C.A.A.F. 2004)).[5] However, where an Article 134 charge implicates constitutionally protected conduct, the heightened plea inquiry requirements of Hartman apply: the colloquy "must contain an appropriate discussion and acknowledgment on the part of the accused of the critical distinction between permissible and prohibited behavior." Hartman, 69 M.J. at 468.

---

affirmed contradictory descriptions of the images he possessed, and the confusion was never resolved.

[5] This Court has also noted the possibility of charging images that do not meet the federal definition of child pornography, but meet some other definition of child pornography. Barberi, 71 M.J. at 131. Assuming such a charge satisfied notice requirements, see generally Warner, 73 M.J. 1, no such charge was presented in this case. Despite the dissent's view and the Government's appellate arguments to the contrary, the military judge variously stated that the nude minors specification did not allege child pornography, that the images of nude minors fall outside the definition of child pornography and must not include a lascivious display, and that the images are not child pornography. Simply put, the nude minors specification was not aimed at child pornography, under the federal definition or otherwise.

Here, the military judge failed adequately to elicit from Appellant that he clearly understood the critical distinction between criminal and constitutionally protected conduct. The military judge commendably expressed reservations about the nude minors specification. Before his colloquy with Appellant, he stated to trial counsel that he "was a little concerned when I saw this specification because it's not alleging possession of child pornography," but was instead alleging possession of images that in the "overwhelming number of cases" was not criminal. The military judge did ask for trial counsel's theory of the case, but, as we explained in Hartman, a discussion between trial counsel and the military judge "provides no substitute for the requisite interchange between the military judge and the accused." 69 M.J. at 469. Accordingly, trial counsel's understanding of her own case theory does not render the plea provident.[6]

The military judge also discussed his concerns with Appellant. Following an overnight recess during which the military judge reviewed the charged images, the military judge and Appellant engaged in the following colloquy:

---

[6] In any event, as we explain below, trial counsel's case theory -- that possession of images of nude minors is criminal where the focal point is nude children, with no artistic value, and where the images are used for sexual gratification -- does not provide an adequate explanation of the critical distinction between criminal and constitutionally protected conduct.

17

> MJ:  Okay.  The concern I have here of course, Specialist Moon, is like I talked about yesterday there might be good reason why you'd have images of nude minors.  I mean there are works of art hanging up in national galleries that portray children nude, but the point there is an artistic expression and not for sexual gratification or [prurient] interest.  You would agree that these weren't artistic models, correct?
>
> ACC:  Yes, sir.
>
> MJ:  And it wasn't for a medical purpose that you had these images, is that right?
>
> ACC:  Yes, sir.
>
> MJ:  And you possessed them for your sexual gratification is what you told me, correct?
>
> ACC:  Yes, sir.
>
> MJ:  And do you think that that's part of why possession of these images isn't protected under the First Amendment of the United States Constitution as a free expression and so forth, that this was actually a crime?
>
> ACC:  Yes, sir.

This colloquy is fatally insufficient because it is an incorrect statement of the law:  possession of images for one's sexual gratification does not itself remove such images from First Amendment protection.  If it did, "a sexual deviant's quirks could turn a Sears catalog into pornography."  United States v. Amirault, 173 F.3d 28, 34 (1st Cir. 1999).  If an accused's subjective reaction to otherwise constitutionally protected images places the images in Article 134's crosshairs, the danger

18

of sweeping and improper applications of the general article would be wholly unacceptable.

In this case, rather than attempting to remove the images of nude minors that were neither child pornography nor obscene from the protection of the First Amendment, the colloquy should have established why the otherwise protected material could still be, and was, prejudicial to good order and discipline or service discrediting in the military context. Without a proper explanation and understanding of the constitutional implications of the charge, Appellant's admissions in his stipulation and during the colloquy regarding why he personally believed his conduct was service discrediting and prejudicial to good order and discipline do not satisfy Hartman.

## IV. Decision

There are substantial bases in law and fact to question Appellant's guilty plea to Specification 2 of the Additional Charge, and therefore we hold that the military judge abused his discretion in accepting the plea. The judgment of the United States Army Court of Criminal Appeals is reversed as to Specification 2 of the Additional Charge and the sentence. The finding of guilty to Specification 2 of the Additional Charge is set aside and the specification is dismissed. The judgment as to the remaining findings is affirmed. The record of trial is returned to the Judge Advocate General of the Army for remand to

the United States Army Court of Criminal Appeals to reassess the sentence.

United States v. Moon, No. 13-0536/AR

OHLSON, Judge, with whom BAKER, Chief Judge, joins
(dissenting):

This case presents two questions.  The first is whether
Appellant had fair notice that his possession of the images
charged under Specification 2 of the Additional Charge was
subject to sanction under Article 134, Uniform Code of Military
Justice (UCMJ), 10 U.S.C. § 934 (2012), because it was
prejudicial to good order and discipline and of a nature to
bring discredit upon the armed forces.  The second question is
whether the images charged under Specification 2 of the
Additional Charge are constitutionally protected because they do
not meet the statutory definition of child pornography provided
by the Child Pornography Prevention Act of 1996 (CPPA), 18
U.S.C. §§ 2252A–2260 (2012).  If so, during the providence
inquiry in the instant case the military judge was obligated to
comply with the enhanced requirements of United States v.
Hartman, 69 M.J. 467, 469 (C.A.A.F. 2011).

For the reasons detailed below, I find that Appellant did
have fair notice.  I further find that the enhanced requirements
of Hartman were not triggered because many of the images in the
instant case meet a definition of prohibited child pornography
that, although broader than the definition used in the CPPA, is
still constitutionally permissible.  Therefore, I respectfully
dissent.

DISCUSSION

## I.  The Images

 Specification 2 of the Additional Charge charged Appellant with possession of images of "nude minors and those appearing to be nude minors."  The images depict young prepubescent and pubescent girls in a variety of poses and locations who are either completely naked or wearing only hats or jewelry.  In several images the young girls are lying on beds or couches, and in some of the images the heads of the girls are cropped so that the emphasis is on their genitals and breasts.  In one image a fully nude girl is posed lying on her side on a bed with her top leg splayed wide to display her genitals.  One of her hands is placed on her hip with her elbow thrust upward.  She is resting her body on her other elbow, and she has the tip of her finger dangling from her mouth as she looks directly at the viewer in a coy and sexual manner.

## II.  Fair Notice

 In its opinion, the majority states:  "We assume, without deciding, that Appellant had notice of the criminality of his conduct."  Despite the posture of this issue in the majority opinion, I deem it appropriate to briefly address the issue of fair notice at the outset of this dissent both because it is a foundational question and because it is one of the two specified issues for review.

All of the charges brought against Appellant arose under Article 134, UCMJ. Clauses 1 and 2 of Article 134, UCMJ, specifically authorize the armed forces to prosecute conduct that is not prohibited in other sections of the UCMJ if such conduct is "to the prejudice of good order and discipline in the armed forces" or "of a nature to bring discredit upon the armed forces."

The prosecution of Article 134, UCMJ, offenses is a deeply rooted practice in the military justice system, and the propriety and constitutionality of such prosecutions has been ratified by the United States Supreme Court. In Parker v. Levy, the Court explained that "Congress is permitted to legislate both with greater breadth and with greater flexibility when prescribing the rules" for "military society." 417 U.S. 733, 756 (1974). The Court also held, however, that due process requires that a defendant charged under Article 134, UCMJ, must have "fair notice" of the criminality of his or her conduct. Id. at 755-56; see also United States v. Vaughan, 58 M.J. 29, 31 (C.A.A.F. 2003) (citing United States v. Bivins, 49 M.J. 328, 330 (C.A.A.F. 1998)).

In determining what constitutes "fair notice," this Court has held that this due process requirement has been met if "any reasonable" member of the military would know that his or her conduct was prohibited. United States v. Sullivan, 42 M.J. 360,

366 (C.A.A.F. 1995).  In turn, the determination of whether a reasonable member would know that his or her conduct fell within the reach of Article 134, UCMJ, can be made by the application of common sense.  United States v. Ashby, 68 M.J. 108, 119 (C.A.A.F. 2009).

In light of these principles, in my view it is clear that Appellant had fair notice that his conduct fell within the ambit of Article 134, UCMJ, and thus was prohibited.  Although the images knowingly possessed by Appellant may not meet the definition of child pornography under the provisions of the CPPA, many of these images certainly meet a common sense definition of child pornography.  Therefore, consistent with Chief Judge Baker's dissent in United States v. Warner, I conclude that "[a]ny reasonable member of the armed forces (in fact any member of the armed forces) of any grade or service would know that these pictures were service discrediting [and prejudicial to good order and discipline] based on the elements of Article 134, UCMJ, and common sense."  73 M.J. 1, 4–5 (C.A.A.F. 2013) (Baker, C.J., dissenting).

III.  Child Pornography and the Constitution

The majority holds that there is a substantial basis in law and fact to question Appellant's guilty plea because the images at issue in the instant case implicated constitutionally protected conduct.  The majority further holds that the

4

constitutional dimensions of this issue triggered the heightened plea inquiry requirements of Hartman and because the military judge did not comply with these requirements, Appellant's guilty plea was not provident.

I do not agree with the majority that these images of nude pubescent and prepubescent girls in sexualized poses had any constitutional protection. I would therefore find that the Hartman providence inquiry requirements did not apply, and I would further find that the military judge did not abuse his discretion when he accepted Appellant's guilty plea.

Although the First Amendment protects Americans' right to free speech, there are limits on the scope of its protection, particularly with regard to child pornography. The Supreme Court has held that child pornography can be criminalized by statute -- even if it is not obscene -- because of the harm that is done to the children who are used in the creation of the images. New York v. Ferber, 458 U.S. 747, 761 (1982); see also Paroline v. United States, 134 S. Ct. 1710, 1716–17 (2014) ("The harms caused by child pornography . . . are still more extensive because child pornography is a 'permanent record' of the depicted child's abuse and 'the harm to the child is exacerbated by [its] circulation.'" (alteration in original) (citation omitted)). The Supreme Court has provided additional guidance by stating that the possession of child pornography may be

criminalized where the images depict a "lewd exhibition of nudity."  Osborne v. Ohio, 495 U.S. 103, 113-15 (1990).[1]

Pursuant to the provisions of the CPPA, Congress has criminalized the creation, possession, and distribution of images that depict minors engaged in "sexually explicit conduct," which is defined as including any "lascivious exhibition of the genitals."  18 U.S.C. § 2256(2)(v).  However, a plain reading of the Supreme Court's decision in Osborne demonstrates that there are constitutionally acceptable definitions of child pornography that are broader than the definition used in the CPPA.[2]  While the CPPA requires "the

---

[1] The terms "lewd" and "lascivious" are equivalent.  United States v. Frabizio, 459 F.3d 80, 85 (1st Cir. 2006) ("The Courts of Appeals have uniformly treated the terms 'lewd' and 'lascivious' as materially equivalent.").

[2] Indeed, many states have enacted such definitions.  See, e.g., Alaska Stat. Ann. §§ 11.61.123, 11.61.127 (West 2014) (noting that a person commits the crime of indecent viewing if he views a picture of the private exposure of the genitals, anus, or female breast of another person without consent); Ark. Code Ann. §§ 5-27-302, 5-27-304 (West 2014) (defining "[s]exually explicit conduct" as including the lewd exhibition of the genitals or pubic area of any person or the breast of a female); 750 Ill. Comp. Stat. Ann 5/11-20.1(1)(vii) (West 2014) (defining "child pornography" to include possession of depictions of minors "portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed or transparently clothed genitals, pubic area, buttocks, or, if such person is female, a fully or partially developed breast"); Kan. Stat. Ann. § 21-5510(d)(1) (West 2014) (defining "sexually explicit conduct" to include "lewd exhibition of the genitals, female breasts, or pubic area of any person"); Ky. Rev. Stat. Ann. § 531.300(4)(d) (West 2014) (defining "[s]exual conduct by a minor" to include the "exposure, in an obscene manner, of the unclothed or apparently unclothed human male or female genitals, pubic area or buttocks,

6

genitals or pubic area" to be on display, a "lewd exhibition of

nudity" could involve other parts of the body and still pass

constitutional muster.  As the Supreme Court noted in Osborne,

"We do not agree that [the] distinction between body areas and

specific body parts is constitutionally significant:  The

crucial question is whether the depiction is lewd, not whether

the depiction happens to focus on the genitals or the buttocks."

495 U.S. at 114 n.11.[3]

---

or the female breast"); Mass. Gen. Laws Ann. ch. 272 § 29C(vii)
(West 2014) (defining depictions of child sexual conduct to
include the lewd exhibition of breasts); Mont. Code Ann. § 45-5-
625(b) (2014) (including lewd depictions of female breasts and
depictions of a nude child or partially nude children with the
purpose to arouse or gratify sexual desires in the definition of
sexual conduct); N.J. Stat. Ann. § 2C:24-4 (West 2014) (defining
"[p]rohibited sexual act" to include nudity if depicted for the
purpose of sexual stimulation or gratification); Okla. Stat.
Ann. tit. 21 § 1024.1.A (West 2014) (including lewd depictions
of female breasts in the definition of "child pornography"); Or.
Rev. Stat. Ann. § 163.665 (West 2014) (defining "[s]exually
explicit conduct" to include lewd exhibitions of sexual or other
intimate parts); Tenn. Code. Ann. § 39-17-1002.[8](G) (West
2014) (including lascivious exhibition of the female breast or
genitals in the definition of "[s]exual activity"); Tex. Penal
Code Ann. § 43.25(a)(2) (West 2014) (including the lewd
exhibition of any portion of the female breast below the top of
the areola in the definition of "[s]exual conduct").
[3] I agree with Chief Judge Baker's suggestion in United States v.
Barberi, that "we should look to Roderick to establish a clear
definition of what constitutes child pornography for the
purposes of clauses (1) and (2) of Article 134, UCMJ."  71 M.J.
127, 135 (C.A.A.F. 2012) (Baker, C.J., dissenting) (citing
United States v. Roderick, 62 M.J. 425 (C.A.A.F. 2006)).  Using
the Roderick analysis, the determination of whether an image of
a nude minor constitutes "lewd nudity" can be made "by combining
a review of the Dost factors with an overall consideration of
the totality of the circumstances."  62 M.J. at 430.  In this
case, the military judge specifically addressed the Dost factors

    As can be seen then, the Supreme Court has not stated that

the CPPA or the CPPA's statutory definitions cover the entire

field of images that may be criminalized as "child pornography."

Nevertheless, the majority opinion presents us with a binary

choice:  either a given image depicts a "lascivious exhibition

of the genitals or pubic area" and is therefore child

pornography, or that image is constitutionally protected under

the First Amendment.  As Chief Judge Baker stated in his dissent

in Barberi, by so doing the Court has eliminated the "middle

ground."  71 M.J. at 135 (Baker, C.J., dissenting).  And yet, it

is precisely that constitutional middle ground that I seek to

defend.

    Stated simply, I would hold in the instant case that

although the images referred to in Specification 2 of the

Additional Charge may not have met the statutory definition of

---

in the context of the facts of this case in determining whether
Appellant's guilty plea to Specification 2 of the Additional
Charge was provident.  The military judge also took into account
Appellant's admissions that he searched for images of naked
children, he knew the images were child pornography when he
downloaded them, he had dozens of similar images, the images
excited his sexual desires, and he used them for his sexual
gratification.  This approach does not constitute a "common
sense test."  Rather, the Roderick analytical framework can be
used to demonstrate that, using common sense, any reasonable
member of the armed forces would know that possession of a
picture of a nude child meeting many or all of the Dost factors,
which was possessed for the purpose of sexual gratification, is
service discrediting.  Moreover, as noted infra, I conclude that
there simply is no constitutional right to the possession of
such pictures for the purpose of sexual gratification.

child pornography contained within the provisions of the CPPA, that does not mean that Appellant had a constitutional right to possess those nude images of young girls in sexualized poses for his own sexual gratification. Thus, rather than apply the stricter Hartman analysis, I would look only at whether the military judge complied with the providence inquiry requirements spelled out in United States v. Care, 18 C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969), and I would conclude that he did. The record reflects that the military judge grasped the underlying issues, made good points about the limits of the CPPA and about the reach of the First Amendment, and sought to approach the issue in an informed and thoughtful manner. Further, the military judge questioned the accused about "what he did or did not do" such that the military judge was satisfied that there was a factual basis for Appellant's plea. See Care, 18 C.M.A. at 541, 40 C.M.R. at 253. Thus, although I concede that the providence inquiry was not always a model of clarity, it sufficed in the instant context.

Moreover, I note that a military judge's determination that an appellant's plea was provident is reviewed for abuse of discretion. United States v. Inabinette, 66 M.J. 320, 322 (C.A.A.F. 2008). We "afford significant deference" in this area because the "facts are by definition undeveloped in such cases." Id. Here, the military judge reviewed each image that was found

in Appellant's possession. He placed in one category the images that met the CPPA definition of sexually explicit conduct. He then separated out any images that did not meet the broader definition of lewd or lascivious nudity. That process then left behind a collection of images that supported Specification 2 of the Additional Charge. Because I would find that the military judge did not use the incorrect legal standard, I find no reason to disturb his analysis of the images or his factual determination that the images depicted lewd exhibitions of nude minors sufficient to provide an adequate factual basis for Appellant's plea. Therefore, I believe the appropriate disposition of the instant case would be to affirm the decision below.

Accordingly, I respectfully dissent.