# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32540**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Mya R. MEDINA**
Airman Basic (E-1), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 14 February 2020

————————————

*Military Judge:* Patricia A. Gruen.

*Approved sentence:* Bad-conduct discharge and confinement for 4 months. Sentence adjudged 27 April 2018 by SpCM convened at Joint Base Elmendorf-Richardson, Alaska.

*For Appellant:* Mark C. Bruegger, Esquire.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Michael T. Bunnell, USAF; Andrew J. Quillen (legal intern);[1] Mary Ellen Payne, Esquire.

Before MINK, KIEFER, and LEWIS, *Appellate Military Judges.*

Judge KIEFER delivered the opinion of the court, in which Senior Judge MINK and Judge LEWIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

[1] Mr. Quillen was at all times supervised by an attorney admitted to practice before this court.

KIEFER, Judge:

Appellant was convicted, pursuant to her pleas and a pretrial agreement (PTA), of one specification of absence without leave on divers occasions, one specification of wrongful possession of marijuana, one specification of wrongful use of Percocet, one specification of wrongful use of Xanax, one specification of willful disobedience of a superior commissioned officer, one specification of willful dereliction of duty, and one specification of false official statement in violation of Articles 86, 90, 92, 107, and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 890, 892, 907, 912a.[2] Pursuant to the PTA, Appellant also pleaded guilty to two specifications of wrongful appropriation, but she was ultimately convicted by the military judge of the greater offenses of larceny under Article 121, UCMJ, 10 U.S.C. § 921. Appellant was sentenced to a bad-conduct discharge and six months confinement. Pursuant to the terms of her PTA, the approved sentence was a bad-conduct discharge and four months confinement.

Appellant asserts three assignments of error: (1) whether the military judge abused her discretion by failing to award Appellant credit for illegal pretrial punishment; (2) whether Appellant's guilty plea to dereliction of duty was provident; and (3) whether Appellant's convictions for larceny were factually sufficient. We find no prejudicial error and affirm.

## I. BACKGROUND

In January 2018, Appellant lived with two civilian sisters and their mother at an off-base residence. While Appellant was living at the home, one of the sisters showed Appellant where they kept cash in the house. In late January 2018, Appellant wrongfully took approximately $2,100.00 that belonged to the sisters from the location where the money was stored. When one of the sisters confronted Appellant about the missing money, Appellant lied and created a story that some stranger must have stolen the money. Appellant used the money to pay her bills and place a down payment on a BMW.

By early February 2018, Appellant had moved on base. On or about 3 February 2018, Appellant brought two male civilian friends on base to visit her new residence. The civilians had marijuana with them, and they left some of the marijuana at Appellant's on-base residence with her knowledge. Around this same time, Appellant obtained one pill each of Percocet and Xanax from civilian friends. She knowingly ingested both pills without any legal justification or authorization.

---

[2] All references in this opinion to the Uniform Code of Military Justice and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.).

Security forces investigators found out about the civilians' visit to Appellant's on-base residence and about the presence of marijuana. A security forces investigator informed Appellant that one of the civilian friends had a felony conviction, and Appellant was not permitted to bring him on base.

In February and March 2018, Appellant was assigned to the 673d Security Forces Squadron at Joint Base Elmendorf-Richardson (JBER). During this time, she was scheduled to work various shifts. On more than one occasion, she failed to show at her duty location at the appointed times and did not have any authorization for her absences.

On March 9, 2018, Appellant submitted a response to a nonjudicial punishment action under Article 15, UCMJ, 10 U.S.C. § 815, to her commander. In the response, Appellant indicated that she was providing financial support to her sister in the hopes that the commander would not adjudge forfeitures as part of a punishment. At the time Appellant prepared and submitted the response, she knew the statement regarding financial support for her sister was false, and she intended to mislead the commander in making this statement.

On 13 March 2018, Appellant's commander restricted her to the limits of JBER. On or about 3 April 2018, despite the order from her commander, Appellant drove off base, picked up the civilian friend who had a felony conviction, and brought him back to base. She was stopped by security forces, who prevented Appellant from taking the civilian to her residence. Appellant's acts of leaving base while restricted and bringing a known felon on base constituted the offenses of disobeying a superior commissioned officer and willful dereliction of duty. On 4 April 2018, Appellant was ordered into pretrial confinement by her commander.

## II. DISCUSSION

### A. Illegal Pretrial Punishment

#### 1. Additional Background

Appellant's commander ordered her into pretrial confinement because she continued to engage in misconduct and violate orders. On 5 April 2018, the pretrial confinement review officer conducted a hearing pursuant to Rule for Courts-Martial (R.C.M.) 305 and determined pretrial confinement was appropriate and should continue.

Appellant was initially processed at the Anchorage Correctional Complex (ACC). She was soon transferred to the Hiland Mountain Correctional Center (HMCC) in Eagle River, Alaska, because the ACC could not accommodate female pretrial confinees. Appellant was placed in the segregation unit at HMCC to satisfy Air Force requirements that she not be housed with post-conviction

inmates. She remained in pretrial confinement there until her trial on 27 April 2018.

Appellant's cell at HMCC had a bed, toilet, and sink as well as a window to the outside on one wall and a window in the door. She was confined in this cell for approximately 23 hours per day and was given one hour of recreation time in an enclosed yard outside of the building as well as a 20-minute private shower period outside of the cell each day. She ate her meals in the cell. Appellant was transported within the facility with handcuffs and/or leg shackles, but these were not worn in her cell. Appellant was permitted to make 93 telephone calls, and she was allowed to receive visitors.

Appellant's initial cell had a camera that could be monitored by corrections officers within the segregation unit but not all cells had cameras. Appellant was initially placed in a cell with a camera because that was all that was available within the segregation unit when she arrived at HMCC. The military judge found that there was no evidence to support that the camera would capture Appellant using the latrine. This conclusion is not clearly erroneous and is supported by the weight of the evidence. *See United States v. King*, 61 M.J. 225, 227 (C.A.A.F. 2005).

An Air Force corrections official visited Appellant while she was at HMCC. Appellant told the official that HMCC staff had mistakenly given her paperwork to a general population inmate with the same last name. Appellant was concerned that the inmate now knew Appellant was a "cop." Appellant asked to remain in the segregation unit for safety reasons. Appellant was confined in the HMCC segregation unit for 23 days up to the first day of trial. Evidence was presented that she was moved to different cells during her stay at HMCC, but it is unclear exactly how many days she was in a cell with a camera.

At trial, Appellant argued that she was entitled to additional credit against any adjudged confinement due to the alleged violation of her Article 13, UCMJ, 10 U.S.C. § 813, rights. She asserted that the conditions of her pretrial confinement either constituted punishment or were so egregious that she was entitled to three-for-one credit beyond the day-for-day credit she was to receive for her time in pretrial confinement.

In particular, Appellant argues that the presence of a camera in her cell constituted egregious conditions that violated Air Force standards for confinees as outlined in Air Force Instruction (AFI) 31-105, *Air Force Corrections System*, ¶ 4.2.5.1.1 (15 Jun. 2015, as amended by AFGM 2017-01, 28 Jun. 2017). Appellant asserts that cameras may not be present in Air Force confinee cells. The AFI, however, states that Air Force officials should "[e]nsure CCTV does not invade confinee privacy (i.e., do not place in cells, toilet, or shower areas) unless suicidal or violent behavior dictates otherwise." *Id.* Pursuant to

this same AFI, Air Force officials also have a responsibility to ensure "a secure, humane, and productive environment for confinees and staff." AFI 31-105, ¶ 1.1. Additionally, Air Force officials are responsible for ensuring military pretrial detainees are separated from illegal aliens and other foreign nationals and not comingled with post-trial civilian inmates. AFI 31-105, ¶ 5.2.4.1. Thus, officials must balance various circumstances to ensure an overall secure and humane environment.

**2. Law**

Article 13, UCMJ, 10 U.S.C. § 813, states:

> No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline.

This article essentially prohibits: (1) the imposition of punishment prior to trial and (2) conditions of arrest or pretrial confinement that are more rigorous than necessary to ensure the accused's presence for trial. *See id.* The commander's intent for ordering pretrial confinement is a "significant factor in [the] judicial calculus" for determining whether there has been an Article 13, UCMJ, violation. *United States v. Huffman*, 40 M.J. 225, 227 (C.M.A. 1994) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)), *overruled on other grounds by United States v. Inong*, 58 M.J. 460, 464 (C.A.A.F. 2003).

Appellant bears the burden of establishing an Article 13, UCMJ, violation. *See United States v. Harris*, 66 M.J. 166, 168 (C.A.A.F. 2008) (citation omitted). We will not overturn a military judge's findings of fact unless they are clearly erroneous, and we review de novo whether Appellant is entitled to credit for a violation of Article 13, UCMJ. *King*, 61 M.J. at 227 (citations omitted).

**3. Analysis**

The military judge determined that none of the conditions of Appellant's pretrial confinement were for the purpose of punishment or were so egregious that they constituted illegal pretrial punishment. Appellant was initially classified as administrative segregation, and she was not treated any differently than other administrative segregation confinees at the HMCC in terms of the time she spent in her cell or the type of cell in which she was housed. She was kept separate from civilian post-conviction inmates pursuant to Air Force policy. Additionally, Appellant requested to remain in administrative segregation due to safety concerns about inmates possibly knowing she was a law enforcement officer. With respect to the camera in her cell, Appellant failed to show how often the camera was actually monitored, how many days she spent in a

cell with a camera, or the extent to which the camera deprived her of privacy. The weight of the evidence indicates she had privacy when using the toilet in her cell and when showering, which occurred in a separate room without a camera outside of her cell. The military judge also found Appellant was able to make 93 phone calls during her time in pretrial confinement and was permitted to receive visitors. Finally, the military judge found an appropriate balance between the conditions of Appellant's confinement and safety considerations.

We find the military judge did not abuse her discretion in finding that Appellant's conditions of pretrial confinement were not for the purpose of punishment and were not so egregious to warrant any relief beyond the day-for-day credit she received for her time in pretrial confinement.

## B. Providence of Appellant's Guilty Plea to Willful Dereliction of Duty

### 1. Additional Background

Appellant stated during her guilty plea inquiry that she brought her civilian friend, who was a convicted felon, to the gate at JBER. She admitted that she knew he was a convicted felon, and that she was not permitted to bring him on base. She knew this as a security forces member and because she was told by a security forces investigator that the civilian was a convicted felon and was not permitted on base. Appellant's only challenge to the providence of her plea is whether bringing the civilian to the gate and getting caught by security forces at that location constitutes bringing a convicted felon "on base."

Appellant acknowledged during the *Care*[3] inquiry that the gate was within the base at JBER. She explained there was a fence line outside of the gate area, and entrants had to cross the fence line to reach the gate. Additionally, during the providence inquiry on the offense of disobeying a superior commissioned officer, Appellant stated she was restricted "to base." She further noted, "That night I left out Muldoon Gate, *which was part of the base . . . .*" (Emphasis added). She then admitted she came back on base and was stopped at the same gate with the civilian felon.

Later in the same inquiry regarding the Article 90, UCMJ, offense, Appellant and the military judge discussed the commander's order restricting Appellant to base.

> [Military Judge (MJ):] Okay. And what exactly was the order as you understood it to be when you read the document.
>
> [Appellant:] That I was not allowed to leave the base or any gate.

---

[3] *See United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969).

[MJ:] Okay. So the fenced area was basically your perimeter, and you couldn't go outside that.

[Appellant:] Yes ma'am.

**2. Law**

"We review a military judge's acceptance of a guilty plea for an abuse of discretion." *United States v. Blouin*, 74 M.J. 247, 251 (C.A.A.F. 2015) (citation omitted). "The test for an abuse of discretion in accepting a guilty plea is whether the record shows a substantial basis in law or fact for questioning the plea." *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citing *United States v. Passut*, 73 M.J. 27, 29 (C.A.A.F. 2014)). "The military judge must question the accused under oath about the offenses to ensure there is an adequate factual basis for a guilty plea." *United States v. Mull*, 76 M.J. 741, 744 (A.F. Ct. Crim. App. 2017) (citing R.C.M. 910(e); Article 45(a), UCMJ, 10 U.S.C. § 845(a)). "It is an abuse of discretion for a military judge to accept a guilty plea without an adequate factual basis . . . ." *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012) (citation omitted). However, we look to the entire record to determine whether there is a substantial basis to question the guilty plea. *See United States v. Jordan*, 57 M.J. 236, 239 (C.A.A.F. 2002).

"A plea is provident so long as Appellant was 'convinced of, and [was] able to describe, all of the facts necessary to establish [his] guilt.'" *United States v. Murphy*, 74 M.J. 302, 308 (C.A.A.F. 2015) (alterations in original) (quoting *United States v. O'Connor*, 58 M.J. 450, 453 (C.A.A.F. 2003)). "If an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014) (quoting *United States v. Goodman*, 70 M.J. 396, 399 (C.A.A.F. 2011)) (internal quotation marks omitted). We "must find a substantial conflict between the plea and the accused's statements or other evidence in order to set aside a guilty plea. The mere possibility of a conflict is not sufficient." *Id.* (citation and internal quotation marks omitted).

**3. Analysis**

The exchange between the military judge and Appellant confirms Appellant's understanding that there is a difference between the perimeter of the base and the gate, and her act of crossing the fence line when she brought the convicted felon to the gate constituted the offense of willful dereliction of duty. We also note the inquiry on the Article 90, UCMJ, offense occurred prior to the inquiry on the willful dereliction of duty offense. Thus, Appellant established an understanding that the gate is on the base prior to being questioned about the willful dereliction of duty offense.

We consider the entire record in determining whether a plea is provident. *See Jordan*, 57 M.J. at 239. Thus, even though some of Appellant's most telling statements about the boundaries of the base occurred during the inquiry on the disobedience offense, we may consider them with regard to Appellant's understanding of what constitutes "the base" for the purposes of her guilty plea to willful dereliction of duty.

In reviewing the entire record, we find the military judge did not abuse her discretion in accepting Appellant's guilty plea to willful dereliction of duty by failing to refrain from bringing a convicted felon on base.

## C. Factual Sufficiency of Convictions for Larceny

### 1. Law

We review issues of factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of factual sufficiency is limited to the evidence presented at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant's] guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); *see also United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (citation omitted). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. Article 121, UCMJ, sets forth definitions related to the offense of larceny and wrongful appropriation. An intent to steal may be proven by circumstantial evidence. *Manual for Courts-Martial, United States (MCM)* pt. IV, ¶ 46.c.(1)(f)(ii). Further, "[a]n intent to steal may be inferred from a wrongful and intentional dealing with the property of another in a manner likely to cause that person to suffer a permanent loss thereof." *Id.* "An intent to pay for or replace the stolen property is not a defense, even if that intent existed at the time of the theft," as long as the perpetrator had the intent to permanently deprive the true owner at some point. *MCM,* pt. IV, ¶ 46.c.(1)(f)(iii)(B).

### 2. Analysis

Appellant pleaded guilty to two specifications of wrongful appropriation and admitted all elements of the greater larceny offenses, except the intent to

permanently deprive the true owners of their property.[4] Appellant instead asserted that she intended to repay the money once she received back pay from the Air Force due to a prior finance mistake.

The military judge found beyond a reasonable doubt that Appellant had the intent to permanently deprive and convicted her of the greater larceny offense for each Article 121, UCMJ, specification. After reviewing the evidence and making allowances for having not personally observed the witnesses, we are similarly convinced. While we acknowledge that Appellant indicated throughout her providence inquiry that she intended to repay the money, her statements were inconsistent with her actions at the time of and immediately following the thefts. The evidence presented in findings showed that, when first confronted by one of the sisters about the missing money, Appellant lied and fabricated a story whereby a stranger must have come into the home, figured out where the money was, and stolen it. Later, Appellant admitted she told the purported "stranger" where the money was, but she did not take the money or intend for the stranger to take it. Appellant repeatedly recounted stories that were inconsistent and untruthful before she finally admitted that she took the money.

While a person may lie about wrongfully taking an item and still have the intent to return it, Appellant's various versions of events were so far-fetched that they demonstrate a more permanent intent. Additionally, Appellant spent most of the money soon after stealing it. While she indicated at trial that she intended to repay the money upon receipt of back pay from the Air Force, her first inclination upon taking the cash was to use it for her own benefit, including paying her bills and placing a down payment on a BMW. Finally, the fact that Appellant made no effort to return the money before she was caught supports a finding of larceny.

An intent to permanently deprive need only exist for a moment at the time of or subsequent to the wrongful taking to consummate the offense of larceny. We find that despite Appellant's representations during the providence inquiry on wrongful appropriation, there was at least a moment when she intended to permanently keep the money she stole. Accordingly, we find the evidence related to the larceny specifications is factually sufficient.

---

[4] The larceny offenses were set forth as two separate specifications because it was determined, and Appellant admitted, that she stole money that belonged to each sister.

### III. CONCLUSION

The findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.[5]

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[5] Counsel for Appellant notes two errors in the promulgating order, specifically that the ending date in the charged timeframe of both specifications of Charge III was 30 January 2018, not 15 January 2018. We concur and direct the publication of a corrected court-martial order to remedy the errors.